## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NANCY CHINCHILLA,                  :       ~~CIVIL ACTION NO. _____~~
                                       **1:23-cv-08986-DEH**

              Plaintiff,       :

       -against-          :       **VERIFIED AMENDED**
                                         **COMPLAINT**

NEW YORK CITY POLICE DEPARTMENT  :
and CITY OF NEW YORK,

             Defendants.     :       **JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiff, NANCY CHINCHILLA, through Counsel, states for her Verified Complaint as follows:

### PRELIMINARY STATEMENT

1.  In the annals of our nation's jurisprudence, a case emerges that strikes at the very heart of religious freedom—an essential cornerstone of our democratic society. At the nexus of this lawsuit stands Plaintiff, Nancy Chinchilla, a devoted public servant, and an unwavering Pentecostal Christian whose faith and convictions have guided the course of her life, including her refusal of all vaccination for herself and her children. This legal battle unveils a grievous and undeniable truth: that the government, entrusted with safeguarding the rights of its citizens, can, at times, stray from its solemn duty.

2.  This case is not one of trivial or technical concerns; it is an impassioned outcry against the violation of a fundamental constitutional tenet—the protection of religious exercise. This lawsuit does not revolve around an employer's genuine apprehensions for safety – indeed, other police officers were accommodated based on their religious beliefs; rather, it exposes a stark and disheartening reality—a dismissal of Mrs. Chinchilla's religious beliefs without empathy,

1

understanding, or respect. In a nation that stands for diversity and religious pluralism, such indifference to deeply-held convictions is an affront to the very principles upon which it was founded.

3.  The Defendants, the New York City Police Department and the City of New York, have not merely rejected a religious exemption—they have disregarded the essence of Mrs. Chinchilla's faith, deeming it unworthy of constitutional protection. In their actions, they have raised a question that strikes at the core of our constitutional rights: Who holds the authority to define and determine the authenticity of an individual's religious beliefs?

4.  The crux of this lawsuit lies in the very essence of religious freedom—what it means to sincerely hold religious beliefs, and who possesses the power to discern their authenticity. Mrs. Chinchilla's beliefs are neither frivolous nor arbitrary; they are firmly rooted in her interpretation of the Bible and the teachings of her faith community. Mrs. Chinchilla and her husband, once proud and dedicated Officers of the New York City Police Department, stood as beacons of service to their city and their faith. United by a profound commitment to their Pentecostal Christian beliefs, their lives were a testament to the sincerity of their convictions. Yet, as the tumultuous waves of the COVID-19 pandemic rolled over the shores of the nation, they found themselves caught in the turbulent currents of an unfathomable predicament—one that tested not only their faith but the very fabric of their constitutional rights.

5.  As her husband's deeply held Pentecostal beliefs were acknowledged and accommodated by the very institution that employed them both, when it came to the Vaccine Mandate both of their religious objections were met with dismissal and disregard. In their haste to impose a Vaccine Mandate, the defendants have tragically misconstrued, misjudged, and disregarded Mrs. Chinchilla's earnest convictions.

6. This is not a case about petty semantics or narrow legal definitions—it is a matter of principle and constitutional integrity. The First Amendment's Free Exercise Clause was enshrined to protect citizens like Mrs. Chinchilla from precisely this sort of governmental overreach and indifference. It was crafted to ensure that the right to religious belief and practice is not confined by the narrow walls of bureaucratic prejudice.

7. In the pages that follow, the court will delve into the depths of Mrs. Chinchilla's sincerely held religious beliefs. It will be illuminated that these beliefs, though not universally shared, are deeply ingrained, consistent, and genuinely sacred to her. They stem from her unwavering understanding of her faith's tenets, which resound with her interpretation of biblical teachings and church doctrine.

8. This case beckons the Court to consider the profound question: What right does the government have to belittle, dismiss, and reject a citizen's religious beliefs, especially when these beliefs are the very nucleus of their identity? This lawsuit seeks justice, not merely for Mrs. Chinchilla, but for every citizen who clings to the promise of religious freedom—a promise that must transcend the shifting tides of circumstance and bureaucratic expedience.

9. The echoes of history guide us; the framers of the Constitution recognized the paramount importance of religious freedom, for it serves as a testament to the values upon which this nation was built. This lawsuit, echoing the voices of the past, calls upon this Court to fulfill its role as a sentinel of justice, ensuring that the flame of religious freedom continues to burn undimmed for generations to come.

## **PARTIES**

10. Plaintiff is a citizen of the United States and a resident and domiciliary of Maricopa County, State of Arizona.

11. Plaintiff was a police officer who was employed by Defendants NYPD and the City of New York since 2004. Plaintiff was constructively terminated in April of 2022 because Defendants refused to reasonably accommodate her religious beliefs.

12. Plaintiff's sincerely held religious beliefs as a Pentecostal Christian requires her to refuse all vaccines.

13. Defendant City maintains a police force known as the New York City Police Department (hereinafter "NYPD"), a municipal corporation duly organized and existing under and by virtue of the Laws of the State of New York. The NYPD's principal office is located at 1 Police Plaza, New York, New York.

14. Defendant City of New York is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

15. At all times herein mentioned, Defendants have been an "employer" as defined by Title VII of the Civil Rights Act of 1964, the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N,Y.C. Admin. Code § 8-102).

16. At all times herein mentioned, Defendants NYPD and NYC employed no fewer than fifteen (15) persons.

## JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Additionally, this Court had jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between Citizens of different States and the matter in controversy exceeds the value of $75,000. Plaintiff further invokes the

supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear claims so related under the New York State Human Rights Law and the New York City Human Rights Law.

18. Venue is proper in this district under 28 U.S.C. §1391(b) because Defendant maintains a principal place of business within this District and a substantial part of the events giving rise to the cause of action arose here.

## STATEMENT OF FACTS

19. Plaintiff, Nancy Chinchilla, (hereinafter "Plaintiff" or "Mrs. Chinchilla") was employed as a Police Officer with the NYPD since July 1, 2004.

20. Mrs. Chinchilla is a Pentecostal Christian and refuses all vaccination based upon her religious beliefs.

21. Mrs. Chinchilla does not vaccinate her children due to her religious beliefs against vaccination.

22. Mrs. Chinchilla's husband, who was a Sergeant in the NYPD before he was also denied a reasonable accommodation to the Vaccine Mandate, had a reasonable accommodation from the NYPD to grow his beard due to his sincerely held religious beliefs as a Pentecostal Christian.

23. Mrs. Chinchilla and her husband were long-time members of the Yorktown Assembly of God where Mrs. Chinchilla served the church in the children's ministry and media ministry and her husband served as the security director.

24. Vaccination was not a condition of employment when Mrs. Chinchilla was hired by the NYPD.

25.     Mrs. Chinchilla worked in an administrative role in the Curriculum Unit at the Police Academy. She was responsible for keeping the curriculum that is taught to the recruits up to date.

26.     She also taught NYPD recruits.

27.     Mrs. Chinchilla worked for the NYPD without a blemish on her record.

28.     At no time during Mrs. Chinchilla's employment with the NYPD was she ever suspended or found to be insubordinate.

29.     In Mrs. Chinchilla's seventeen years of employment, the NYPD never required employees to receive any vaccinations.

30.     In early 2020, COVID-19 began circulating in New York City.

31.     In March of 2020, the Governor of New York State issued an executive order closing "non-essential" businesses.

32.     As an "essential worker" Mrs. Chinchilla worked throughout the COVID-19 pandemic.

33.     For a significant period during this time, the Defendants did not provide Mrs. Chinchilla and other NYPD employees with Personal Protective Equipment, such as masks and gloves, or hand sanitizer.

34.     The NYPD instructed Mrs. Chinchilla to reuse used masks.

35.     Mrs. Chinchilla would leave her used masks under the sun to kill any germs.

36.     Defendants never trained or taught NYPD employees how to remain safe while working during the COVID-19 pandemic.

37.     The NYPD's Chief of Department released a video to the members of the NYPD telling them it was safe to work and go out in public.

38.     Plaintiff worked throughout the COVID-19 pandemic, in person, for over two years.

39.     During this time, Mrs. Chinchilla and her husband were not permitted to take vacation time, were forced to work extended tours, and mandatory overtime.

40.     In the midst of manpower shortages and spikes of violent crime, she stepped up to provide essential services for New York City when the majority of citizens remained safely at home. And although being a police officer was often a thankless job, with the public growing increasingly hostile and dangerous, it did not stop Mrs. Chinchilla from risking her life to serve and protect this City.

41.     Mrs. Chinchilla worked details as needed, for example, parades, special events, protests, riots.

42.     On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate, an Order requiring all City Workers to receive a COVID-19 vaccine by October 29, 2021 (hereinafter "Vaccine Mandate").[1] Subsection eight of the Health Commissioner's Order provides for reasonable accommodations.

43.     The Defendants NYPD and the City did not collectively bargain with Mrs. Chinchilla's Union, the Police Benevolent Association, before implementing or enforcing the Vaccine Mandate.

44.     At no time prior to the Vaccine Mandate did the NYPD ever require Mrs. Chinchilla to receive any vaccinations.

45.     The Vaccine Mandate provided for reasonable accommodations on its face pursuant to the Order of the New York City Commissioner of Health and Mental Hygiene.

---

[1] Health Commissioner's Order, accessible at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf

46.     The City promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process.

47.     This policy, entitled "FAQ on New York City Employees Vaccine Mandate" provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation."

48.     This policy also provided that the alternative to vaccination allowed which would not cause an undue hardship if an employee is granted a reasonable accommodation would be submission of a weekly negative test result.

49.     This policy also provided that employees who requested reasonable accommodations would continue working and submitting weekly negative test results while their accommodation request was pending with their individual agency, and then with the Citywide Panel.

50.     Defendants never informed Plaintiff of any criteria, factors, or requirements for receiving a religious accommodation to the Vaccine Mandate.

51.     The NYPD provided a form for employees requesting a reasonable accommodation to the Vaccine Mandate.

52.     This form stated that "Reasonable Accommodations for COVID-19 Vaccinations will be provided by the New York City Police Department to qualified employees with Medical or Religious exemptions".

53.     The form also stated: "Supporting documentation from you and/or your religious official explaining your religious exemption from the COVID-19 vaccine is strongly suggested."

54.     No where on the form was there a space provided for the particular accommodation being requested by the applicant.

44.55.  At the bottom of the form, it advised applicants that if a reasonable accommodation was granted, the applicant would have to wear a mask and engage in mandatory testing in lieu of vaccination in compliance with the New York City Mayoral Vaccination Mandate.

45.56.  On October 21, 2021, Mrs. Chinchilla submitted a request for a reasonable accommodation to the NYPD's Equal Employment Opportunity Division (hereinafter "EEOD") because receiving the COVID-19 vaccine would cause her to violate her sincerely held religious beliefs.

46.57.  Mrs. Chinchilla's request included the NYPD's a form entitled "Reasonable Accommodation Application for COVID-19 Vaccine Exemption for Members of the Service", which was provided by the NYPD.

47.58.  Mrs. Chinchilla's request also included a five-page personal letter, explaining in detail her religious beliefs and how they conflict with receiving the COVID-19 vaccination.

48.59.  Specifically, Mrs. Chinchilla explained that all of the COVID-19 vaccines available at the time of her request, used aborted fetal cell lines, which originated from aborted children, in their manufacturing or testing.

49.60.  Mrs. Chinchilla explained in her request that she believes all life begins at conception and ends at natural death. She believes that God creates every human life intentionally and with purpose.

50.61.  Mrs. Chinchilla explained that the Christian Church has condemned abortion from earliest times.

51.62.  Mrs. Chinchilla explained that it is her sincerely held religious belief that abortion is murder.

52.63.  Mrs. Chinchilla explained that receivinged the COVID-19 vaccination would violate her religious beliefs regarding abortion.

53.64.  Mrs. Chinchilla explained that the COVID-19 vaccines were developed or tested using aborted fetal cell lines.

54.65.  Mrs. Chinchilla explained that Johnson and Johnson used aborted fetal cell lines in manufacturing its COVID-19 vaccine.

55.66.  Mrs. Chinchilla explained that Moderna and Pfizer used aborted fetal cell lines in manufacturing its COVID-19 vaccine.

56.67.  Mrs. Chinchilla explained that if she were to receive any of the COVID-19 vaccines available at the time, she would be cooperating with and complicit in abortion, which she believed was the ending of a human life.

57.68.  Mrs. Chinchilla explained that receiving the COVID-19 vaccines would constitute a sin against God and a violation of His Commandments for which she would be held accountable by God.

58.69.  Additionally, Mrs. Chinchilla explained that she is a follower of Jesus Christ and that she believes her body is the temple of God's Holy Spirit.

59.70.  Mrs. Chinchilla explained that God requires her to treat her body and soul as holy and sacred.

60.71.  Mrs. Chinchilla also explained that her sincerely held Pentecostal Christian beliefs do not allow her to have a biological substance injected into her body. She stated that she does not consent to receiving a COVID-19 vaccine or any other vaccinations.

61.72.  Mrs. Chinchilla explained that she believes her blood is sacred and life is found in the blood.

10

62.73.  Mrs. Chinchilla explained that her salvation was bought and paid for by the blood of Jesus Christ and she cannot taint her own blood with vaccines.

63.74.  In her request, Mrs. Chinchilla cited to numerous scriptures from the bible that supported her religious beliefs.

64.75.  Additionally, with her request, Mrs. Chinchilla submitted a letter, dated September 10, 2021, from her pastor, Reverend Don Foster, of the Yorktown Assembly of God.

65.76.  In the letter, Reverend Foster explained that he has been the pastor of Yorktown Assembly of God for over twenty-seven years, and that Mrs. Chinchilla and her husband and two children are active and faithful attendees of his church and a "vital part" of the church family, and that they volunteer within the church. The letter stated in pertinent part:

> I have known this family for many, many years now and I can confirm for you that Edgar and Nancy share our church's biblical belief in God, the author of the Holy Bible. We share the believe that we were created in His image as found in Genesis 1:27. We believe that He is our refuge and strength, our ever-present help in time of need, as taught in Psalm 46:1. We as Christians live our lives dedicated to following His word by keeping his commands which is taught in Deuteronomy 8:11 and throughout the Holy Bible. We believe that He will never leave us nor forsake us as found in 1 Chronicles 28:20 and Deuteronomy 31:8. We believe that our bodies are not our own but a temple of the Holy Spirit and we are not to defile them but use them to glorify God as found in 1 Corinthians 6:19-20 and 1 Corinthians 6:19-20. Finally, we believe that He is our healer, our deliverer, and our redeemer as taught in Jeremiah 17:14.

> These beliefs we hold dear to our hearts as believers in Jesus Christ. We live our lives dedicated to honoring His Holy Word.

66. On December 20, 2021, the City promulgated its "Guidance on Accommodations for Workers". The City's Guidance on Accommodations for Workers included a checklist "intended to guide employers and managers in evaluating requests they may receive from workers for reasonable accommodations or exemptions from the requirement that they be vaccinated against COVID-19." The City's Guidance on Accommodations for Workers

~~includes lists of reasons for refusing the COVID-19 vaccination which do not qualify for a religious accommodation, and reasons that may qualify for accommodation. The list for qualifying reasons includes: "Worker says that they cannot take the vaccine because it was developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion."~~

77. On December 20, 2021, the City promulgated its "Guidance on Accommodations for Workers". The City's Guidance on Accommodations for Workers included a checklist "intended to guide employers and managers in evaluating requests they may receive from workers for reasonable accommodations or exemptions from the requirement that they be vaccinated against COVID-19." The City's Guidance on Accommodations for Workers includes lists of reasons for refusing the COVID-19 vaccination which do not qualify for a religious accommodation, and reasons that may qualify for accommodation. The list for qualifying reasons includes: "Worker says that they cannot take the vaccine because it was developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion."

78. On February 8, 2022, Plaintiff's request for a reasonable accommodation was denied by Defendant NYPD. The denial was indicated on a boilerplate form which did not contain her name and included a pre-printed checklist of eight possible reasons for denial. Three of these reasons were checked off: (1) "Objection was personal, political, or philosophical"; (2) "Written statement does not set forth how religious tenets conflict with the vaccine requirement"; and (3) "No demonstrated history of vaccination/medicine refusal".

~~67.~~

12

79. NYPD Equal Employment Opportunity Division Director, Michael Melocowsky held a training session for those responsible for deciding accommodation requests to the Vaccine Mandate. During that training session, he instructed the reviewers that judgments on religious accommodation requests were "subjective" and that the reviewers would have to decide if the applicant had a sincerely held religious belief.

80. Director Melocowsky stated that very few religious accommodations would be approved.

81. Director Melocowsky explained that applications which cited use of aborted fetal cell lines as an objection to the COVID-19 vaccine should be denied if the applicant failed to also state an objection to medications such as Tylenol and Pepto Bismol.

82. The NYPD did not permit unvaccinated employees to review reasonable accommodation requests.

83. A whistleblower – an employee who attended Director Melocowsky's training – disclosed to the Citywide Panel that the NYPD was instructing reviewers of accommodation requests that cooperative dialogues were not necessary in violation of the NYCHRL. The whistleblower also alleged complained of the discriminatory scrutiny applied to requests, the failure to disclose criteria being used, disparate treatment, and potential bias. The Court can take judicial notice of the Whistleblower's Affirmation in Valdez v. City of New York, Index No. 152301/2022, NYSCEF Doc. No. 114. The City's settlement with this Whistleblower is located at NYSCEF Doc. No. 115.

84. The Defendants did not contact Mrs. Chinchilla regarding her request before issuing this denial.

68.85.     Director Melocowsky instructed those assigned with making determinations on religious accommodation requests to the Vaccine Mandate that they did not need to communicate with applicants before denying their applications.

69.86.     There was no interactive process or cooperative dialogue regarding her Plaintiff's request for accommodation.

70.87.     The NYPD granted reasonable accommodations to the Vaccine Mandate to other employees, including police officers working in the field.

71.88.     The NYPD's denial letter indicated that the Plaintiff could file an appeal to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel ("Citywide Panel").

72.89.     The Citywide Panel was created by the City and tasked with hearing appeals from City Workers who were denied reasonable accommodations to thew Vaccine Mandate by their respective agencies, including the NYPD.

73.90.     Mrs. Chinchilla timely submitted her request for reasonable accommodation to the Citywide Panel.

74.91.     No one from the City or the NYPD contacted Mrs. Chinchilla regarding her request for accommodation.

75.92.     On March 14, 2022, the Citywide Panel denied Plaintiff's request for a reasonable accommodation.

76.93.     The Citywide Panel's denial stated only "Does Not Meet Criteria" as the classification designation.

77.94.    The Citywide Panel's denial also notified Mrs. Chinchilla that if she did

not submit proof of COVID-19 vaccination she would be put on Leave Without Pay within

seven calendar days.

78.95.    Other than the denial Mrs. Chinchilla received, the Defendants did not

contact Mrs. Chinchilla regarding her reasonable accommodation request to the Citywide

Panel.

79.96.    The Citywide Panel granted other NYPD employees reasonable

accommodations to the Vaccine Mandate, including police officers in the field who had

contact with the public and other NYPD employees.

80.97.    Subsequently, on or about March 15, 2022, the NYPD sent Mrs.

Chinchilla an e-mail notifying her that she would be placed on Leave Without Pay and then

terminated.  The e-mail stated in pertinent part:

> This communication is to advise you that the Department has been informed that you
> received a final decision on your application for a reasonable accommodation from the
> City's COVID-19 vaccination requirement. Your appeal has been denied and you will be
> placed on leave without pay (LWOP), effective **Monday, March 21, 2022**, if you do not
> come into compliance with the Health Commissioner's Order by receiving at least one
> dose of a COVID-19 vaccine and uploading proof into the Central Personnel Resource
> (CPR) System. You will be returned from LWOP after providing this proof.

> Further, if you do not submit proof of at least one dose of a COVID-19 vaccine into the
> CPR system by the end of day **Friday, March 25, 2022**, the City of New York will
> **terminate your employment**.

81.98.    Upon learning that she would be terminated, she suffered immense pain

and suffering, including acute stress and panic attacks. She did not know how she would pay

her mortgage or feed her children.

99. Facing certain imminent termination, Mrs. Chinchilla ran her accrued leave time

and then on April 13, 2022, Mrs. Chinchilla retired from the NYPD.

100.     Plaintiff would not have retired but for her imminent termination.

101.     Plaintiff felt compelled to resign because she knew that Defendants were terminating her employment imminently.

102.     If Plaintiff did not resign, Defendants would have terminated her.

103.     Plaintiff did not voluntarily resign.

104.     Plaintiff did not have the choice to continue her employment.

~~82.~~105.     Plaintiff's termination was scheduled by the Defendants and was inevitable.

~~83.~~106.     Defendants constructively terminated Mrs. Chinchilla.

~~84.~~107.     If Mrs. Chinchilla did not retire she would be terminated and completely lose any and all pension that she was entitled to after working for the NYPD for over seventeen years.

~~85.~~108.     Retiring early at seventeen years caused Mrs. Chinchilla significant pecuniary loss, including but not limited to pension losses.

~~86.~~109.     On September 28, 2022, Mrs. Chinchilla filed a complaint against the NYPD with the New York State Division of Human Rights.

~~87.~~110.     On May 3, 2023, the New York State Division of Human Rights dismissed the Plaintiff's complaint at her request and annulled the election of remedies so that she could bring the instant action.

~~88.~~111.     The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where other NYPD employees were accommodated.

89.112.    The City promulgated "FAQs on New York City Employees Vaccine Mandate" which stated that if an employee was granted a reasonable accommodation, the submission of a weekly PCR test and wearing a mask in the workplace was an allowable accommodation that would not cause an undue hardship and/or disruption.

90.113.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the COVID-19 vaccine does not cause prevention or transmission of the COVID-19 virus.

91.114.    The Defendants could have accommodated Plaintiff s request by providing routine weekly testing and masking.

92.115.    Other NYPD employees, including police officers – were accommodated with routine COVID-19 testing and masking.

93.116.    In April of 2022, due to both Mrs. Chinchilla and her husband losing their jobs to the Vaccine Mandate, they moved with their children to Arizona.

94.117.    The Defendants' unlawful action turned Plaintiff's world upside-down; from selling her home and moving across the country, leaving her church, community and career that she loved behind.

95.118.    With both her and her husband, both police officers for the NYPD, terminated and left without income, they made the heartbreaking decision to leave everything they knew behind. Her emotional distress was increased by the daunting road ahead of having to move to another state, while trying not to spend much money.

96.119.    Her young children were devastated to leave their childhood home and everything they knew behind, causing her guilt, uncertainty and immense stress.

97.120.   Once in Arizona, Mrs. Chinchilla did not have the same family and friends to help her with her children. Mrs. Chinchilla, her husband, and two children lived in one bedroom for months while they tried to find a home.

98.121.   Her children cried and begged to go back to New York, where they could no longer afford to live.

99.122.   Mrs. Chinchilla and her family were forced to pinch every penny, foregoing even the simplest pleasures, such as trips to the ice cream parlor for her children.

100.123.   This caused the Plaintiff immense pain and suffering, which manifested itself physically. In addition to feelings of extreme and acute stress and panic attacks, difficulty sleeping, she also suffered from depression, anger, anxiety, countless sleepless nights, many bouts of uncontrollable crying, weight gain, overall feeling of doom, insecurity, feelings of failure. Immense emotional pain additionally translated to physical pain, such as migraines, fatigue, mental fog, the loss of motivation.

## CLAIMS

## FIRST CAUSE OF ACTION

**(Failure to Accommodate in Violation of the New York City Human Rights Law)**

101.124.   Plaintiff reincorporates the foregoing as if fully written herein.

102.125.   At all relevant times, the NYCHRL has been in full force and effect and has applied to Defendants' conduct.

103.126.   Pursuant to the NYCHRL,

It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8–107(3)(a).

104.127.　At all relevant times, the Defendants had the power to hire, promote, and discharge Mrs. Chinchilla.

105.128.　Mrs. Chinchilla has sincerely held religious beliefs which prohibit her from receiving the COVID-19 vaccines.

129.　The Defendants required Mrs. ChinchillaCity Workers to receive the COVID-19 vaccine to retain her employment. However, vaccination is not a condition of employment for those who are eligible for a religious or medical accommodation.

130.　The Vaccine Mandate provided for reasonable accommodations on its face.

106.131.　And the Defendants implemented a procedure for accepting accommodation requests.

107.132.　Mrs. Chinchilla requested a reasonable accommodation to the Defendants' requirement that she receive the COVID-19 vaccination.

108.133.　Defendants denied Mrs. Chinchilla's request for a reasonable accommodation.

109.134.　Defendants failed to provide Mrs. Chinchilla with a reasonable accommodation of her religious observance, practice, and belief (i.e., that she is prohibited from taking the COVID-19 vaccine), which precludes her from complying with the Vaccine Mandate.

110.135.　In 2005, the New York City Council amended the NYCHRL by passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), N.Y.C. Local L. No. 85.

In amending the NYCHRL, the City Council expressed the view that the NYCHRL had been "construed too narrowly" and therefore "underscore[d] that the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes." Restoration Act § 1. To bring about this change in the law, the Act established two new rules of construction. First, it created a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only " 'as a *floor* below which the City's Human Rights law cannot fall.' " *Loeffler,* 582 F.3d at 278 (quoting Restoration Act § 1). Second, it amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." Restoration Act § 7 (amending N.Y.C. Admin. Code § 8–130).

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also*

*Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.,* 814 F. Supp.2d 355, 365-66 (S.D.N.Y.

2011) ("[T]he Second Circuit has directed the district courts to conduct an analysis of the

NYCHRL claims that is separate from that undertaken for Title VII and New York State Human

Rights Law claims." (citing *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278-79 (2d Cir.

2009)).

111.136.     In 2011, New York City enacted the Workplace Religious Freedom Act,

amending sections 8-102 and 8-107 of the NYCHRL, and adopting a stiffer standard for

assessing undue hardship. The committee report accompanying this amendment stated that

the City Council's intention is "to provide greater protection to workers under the City

Human Rights Law than the federal, and even the State, human rights provisions provide."

N.Y.C. Council, Report of Committee on Civil Rights on Proposed Int. No. 632, Aug. 16,

2011. "The standard for assessing undue hardship under the NYCHRL differs from that

under federal law when considering requests for reasonable accommodation." *COVID-19 &*

*Employment Protections*, "Vaccinations," NYC Human Rights, accessible at

https://www.nyc.gov/site/cchr/community/covid-employment.page (last updated 11/1/2021).

112.137.     The New York City Human Rights Law explicitly defines undue hardship:

"Reasonable accommodation", as used in this subdivision, shall mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business. The employer shall have the burden of proof to show such hardship. "Undue hardship" as used in this subdivision shall mean an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system).

N.Y.C. Admin. Code § 8-107(3)(b).

113.138.    Mrs. Chinchilla was able to perform the essential duties of her job with a reasonable accommodation.

114.139.    Accommodating Mrs. Chinchilla would not require significant expense or difficulty from the Defendants.

115.140.    Accommodating Mrs. Chinchilla would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

116.141.    Accommodating Mrs. Chinchilla would not require the Defendants to violate a bona fide seniority system.

142.        Defendants accommodated other NYPD employees with weekly PCR testing.

143.        Defendants permitted other NYPD employees to continue working in their same position while engaging in weekly PCR testing without receiving the COVID-19 vaccine.

144.        Defendants permitted NYPD employees who had contact with the public and with other NYPD employees to continue working in their same job positions without receiving the COVID-19 vaccine.

145.        Defendants did not deny any NYPD employees religious exemption requests based upon undue hardship.

146.    If an NYPD employee sufficiently convinced the Defendants that his or her beliefs were religious, then that employee was provided a reasonable accommodation and permitted to keep working while unvaccinated.

~~117.~~147.    The Defendants' implemented a policy that provided for an accommodation of weekly PCR testing for NYPD employees.

~~118.~~148.    The NYCHRL prohibits Defendants from denying Mrs. Chinchilla's request for a reasonable accommodation until they engaged in a cooperative dialogue with her:

> The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

~~119.~~149.    However, Defendants violated the NYCHRL by denying Mrs. Chinchilla's request for a reasonable accommodation without engaging in a cooperative dialogue.

~~120.~~150.    Instead of accommodating Mrs. Chinchilla's religious beliefs, Defendants constructively terminated her because she could not receive the COVID-19 vaccination.

~~121.~~151.    Mrs. Chinchilla was constructively terminated because the Defendants refused to accommodate her religious beliefs.

~~122.~~152.    Defendants had no objective basis for questioning the religious nature of Mrs. Chinchilla's religious beliefs.

~~123.~~153.    Defendants had no objective basis for questioning the sincerity of Mrs. Chinchilla's religious beliefs.

~~124.~~154.    Mrs. Chinchilla sufficiently articulated and explained the religious nature of his conflict with the Vaccine Mandate.

125.155.   Mrs. Chinchilla set forth in explicit detail, citing to scripture, how her religious tenets conflict with the vaccine requirement.

126.156.   Defendants never asked Mrs. Chinchilla to demonstrate any history of vaccination or medicine refusal. Nor is such a history required in order to qualify for a reasonable accommodation.

127.157.   Mrs. Chinchilla did state in her accommodation request that it was all vaccination that she rejects – not only the COVID-19 vaccine.

128.158.   Mrs. Chinchilla rejects all vaccination and does not vaccinate her children due to her religious beliefs.

129.159.   Defendants simply rejected Mrs. Chinchilla's religious beliefs without reason.

130.160.   Defendants discriminated against Mrs. Chinchilla's religious beliefs.

131.161.   Defendants cannot demonstrate that accommodating Mrs. Chinchilla would cause an undue hardship.

132.162.   Defendants accommodated other NYPD employees in the same or similar position as the Mrs. Chinchilla.

133.163.   Defendants permitted other NYPD employees to submit weekly PCR testing instead of receiving the COVID-19 vaccination.

134.164.   As a direct and proximate result of Defendants' unlawful discriminatory practices, Mrs. Chinchilla has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which he is entitled to an award of

monetary damages which exceeds the $75,000 jurisdictional requirement of this Court, and other relief.

135.165. As a direct and proximate result of Defendants' failure to accommodate, Mrs. Chinchilla suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

136.166. As a direct and proximate result of Defendants' failure to accommodate, Mrs. Chinchilla is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

137.167. Defendants willfully violated Mrs. Chinchilla's right to a reasonable accommodation.

138.168. Defendants willfully violated Mrs. Chinchilla's right to a cooperative dialogue.

139.169. Defendants willfully violated Mrs. Chinchilla's right to an interactive process.

140.170. Defendants willfully and wrongfully terminated Mrs. Chinchilla.

141.171. Defendants knew they were acting in violation of the law.

142.172. The City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate and

acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

143.173.   The Defendants knew that they were required under the law to engage in a good faith discussion with Mrs. Chinchilla in an attempt to understand her accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

144.174.   The Defendants knew that Mrs. Chinchilla's beliefs qualified as religious under the law.  There is no common sense reading of his request where Mrs. Chinchilla's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Mrs. Chinchilla's religious beliefs.

145.175.   The City's FAQ on New York City Employees Vaccine Mandate recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation."

146.176.   Defendants knew that they were legally required to engage in a cooperative dialogue but failed to engage in such dialogue with Mrs. Chinchilla regarding his request for an accommodation before summarily denying her request.

147.177.   Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Mrs. Chinchilla regarding his request for an accommodation before summarily denying his request.

148.178.   Defendants violated their own employment policies and procedures by failing to engage in a cooperative dialogue with Mrs. Chinchilla.

149.179.   Defendants violated their own employment policies and procedures by failing to engage in an interactive process with Mrs. Chinchilla.

25

180. Defendants violated their own employment policies and procedures by refusing to accommodate Mrs. Chinchilla.

181. Defendants violated their own employment policies and procedures by denying Mrs. Chinchilla's beliefs were religious.

182. Defendants did not consider Mrs. Chinchilla's individual job duties before refusing to accommodate her.

183. Defendants callously rejected Mrs. Chinchilla's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

184. Defendants acted with malice.

185. Defendants' actions amount to willful or wanton negligence.

186. Defendants' discrimination was willful.

187. Defendants' discrimination was reckless.

188. Defendants consciously disregarded Mrs. Chinchilla's right to a reasonable accommodation.

189. Defendants consciously disregarded Mrs. Chinchilla's right to a cooperative dialogue.

190. Defendants consciously disregarded Mrs. Chinchilla's right to an interactive process.

191. Defendants consciously disregarded Mrs. Chinchilla's right to retain her employment.

192. Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of Mrs. Chinchilla.

163.193.    Defendants acted with reckless indifference to Mrs. Chinchilla's rights.

164.194.    As a direct and proximate result of Defendants' conduct, Mrs. Chinchilla is entitled to punitive damages under NYCHRL in an amount to be determined at trial.

165.195.    Mrs. Chinchilla is further entitled to an award of attorney's fees, expert fees, and other costs under the NYCHRL. N.Y.C. Admin. Code §8-502(g).

## SECOND CAUSE OF ACTION

### (Failure to Accommodate in Violation of the NYSHRL)

166.196.    Plaintiff reincorporates the foregoing as if fully written herein.

167.197.    At all relevant times, the NYSHRL has been in full force and effect and has applied to Defendants' conduct.

168.198.    The NYSHRL provides:

It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Executive Law § 296(10)(a).

169.199.    "Undue hardship" is defined as "an accommodation requiring significant expense or difficulty (including significant interference with the safe or efficient operation of the workplace…)." N.Y. Executive Law § 296(10)(d).

170.200.    If the undue hardship is alleged based on a safety concern, "the employer must make an individualized assessment, based on reasonable judgment that relies on current

medical knowledge or on the best available objective information to ascertain: the nature, duration and severity of the risk; the probability that the potential injury will actually occur, and whether reasonable accommodations, such as modification of policies, practices or procedures, will mitigate the risk." 9 CRR-NY 466.11.

171.201.   At all relevant times, the Defendants were employers of Mrs. Chinchilla.

172.202.   Mrs. Chinchilla has sincerely held religious beliefs which prohibit her from receiving the COVID-19 vaccines and all vaccines.

173.203.   The Defendants required Mrs. Chinchilla to receive the COVID-19 vaccine to retain her employment.

174.204.   Mrs. Chinchilla requested a reasonable accommodation to the Defendants' requirement that she receive the COVID-19 vaccination.

175.205.   Defendants rejected Mrs. Chinchilla's religious beliefs without reason.

176.206.   Defendants had no objective basis for questioning the religious nature of Mrs. Chinchilla's religious beliefs.

177.207.   Defendants had no objective basis for questioning the sincerity of Mrs. Chinchilla's religious beliefs.

178.208.   Mrs. Chinchilla sufficiently articulated and explained the religious nature of her conflict with the Vaccine Mandate.

179.209.   Defendants simply rejected Mrs. Chinchilla's religious beliefs without reason.

180.210.   Defendants discriminated against Mrs. Chinchilla's religious beliefs and practice.

181.211.   Defendants denied Mrs. Chinchilla's request for a reasonable accommodation.

182.212.   Defendants failed to provide Mrs. Chinchilla with a reasonable accommodation of her religious observance, practice, and belief (i.e., that she is prohibited from taking the COVID-19 vaccine), which precludes her from complying with the Vaccine Mandate.

183.213.   Mrs. Chinchilla was able to perform the essential duties of her job with a reasonable accommodation.

184.214.   Accommodating Mrs. Chinchilla would not require significant expense or difficulty from the Defendants.

185.215.   Accommodating Mrs. Chinchilla would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

186.216.   Accommodating Mrs. Chinchilla would not require the Defendants to violate a bona fide seniority system.

187.217.   Defendants failed to engage in any interactive process with Mrs. Chinchilla regarding his accommodation request.

188.218.   Defendants failed to engage in good faith with Mrs. Chinchilla in order to understand her need for accommodation.

189.219.   Mrs. Chinchilla sufficiently articulated her sincerely held religious beliefs to the Defendants.

190.220.   Defendants' requirements for demonstrating a sincerely held religious belief that conflicts with the Vaccine Mandate are unreasonable and unlawful.

191.221.    Defendants violated the NYSHRL by denying Mrs. Chinchilla's request for a reasonable accommodation without first engaging in an interactive process.

192.222.    Instead of accommodating Mrs. Chinchilla's religious beliefs, Defendants constructively terminated Mrs. Chinchilla because she could not receive the COVID-19 vaccination.

193.223.    Defendants refused to allow Mrs. Chinchilla to keep her job because she could not receive the COVID-19 vaccine without violating her religious beliefs.

194.224.    Mrs. Chinchilla was terminated because the Defendants failed to consider any reasonable accommodations to the Vaccine Mandate.

195.225.    As a direct and proximate result of Defendants' failure to accommodate, Mrs. Chinchilla has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which he is entitled to an award of monetary damages which exceeds the jurisdictional limits of all lower courts, and other relief.

196.226.    As a direct and proximate result of Defendants' failure to accommodate, Mrs. Chinchilla suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

197.227.    Mrs. Chinchilla is thus entitled to injunctive and declaratory relief, as well as compensatory and punitive damages for the injuries and loss sustained as a result of

Defendants' unlawful discriminatory conduct under the NYSHRL, in an amount which exceeds the $75,000 jurisdictional requirement of this Court.

198.228.    Defendants willfully violated Mrs. Chinchilla's right to a reasonable accommodation.

199.229.    Defendants willfully violated Mrs. Chinchilla's right to a cooperative dialogue.

200.230.    Defendants willfully violated Mrs. Chinchilla's right to an interactive process.

201.231.    Defendants willfully and wrongfully constructively terminated Mrs. Chinchilla.

202.232.    Defendants knew they were acting in violation of the law.

203.233.    The City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

204.234.    The Defendants knew that they were required under the law to engage in a good faith discussion with Mrs. Chinchilla in an attempt to understand her accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

205.235.    The Defendants knew that Mrs. Chinchilla's beliefs qualified as religious under the law.  There is no common sense reading of her request where Mrs. Chinchilla's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Mrs. Chinchilla's religious beliefs.

206.236.   The City's FAQ on New York City Employees Vaccine Mandate recognized that "[a] sincerely held religious, moral or ethical belief may be a basis for a religious accommodation."

207.237.   Defendants knew that they were legally required to engage in a cooperative dialogue but failed to engage in such dialogue with Mrs. Chinchilla regarding her request for an accommodation before summarily denying his request.

208.238.   Defendants knew that they were legally required to engage in an interactive process but failed to engage in such process with Mrs. Chinchilla regarding his request for an accommodation before summarily denying his request.

209.239.   Defendants violated their own employment policies and procedures by failing to engage in a cooperative dialogue with Mrs. Chinchilla.

210.240.   Defendants violated their own employment policies and procedures by failing to engage in an interactive process with Mrs. Chinchilla.

211.241.   Defendants violated their own employment policies and procedures by refusing to accommodate Mrs. Chinchilla.

212.242.   Defendants violated their own employment policies and procedures by denying Mrs. Chinchilla's beliefs were religious.

213.243.   Defendants did not consider Mrs. Chinchilla's individual job duties before refusing to accommodate her.

214.244.   Defendants callously rejected Mrs. Chinchilla's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial on a preprinted form.

215.245.   Defendants acted with malice.

216.246.   Defendants' actions amount to willful or wanton negligence.

217.247.   Defendants' discrimination was willful.

218.248.   Defendants' discrimination was reckless.

219.249.   Defendants consciously disregarded Mrs. Chinchilla's right to a reasonable accommodation.

220.250.   Defendants consciously disregarded Mrs. Chinchilla's right to a cooperative dialogue.

221.251.   Defendants consciously disregarded Mrs. Chinchilla's right to an interactive process.

222.252.   Defendants consciously disregarded Mrs. Chinchilla's right to retain her employment.

223.253.   Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of Mrs. Chinchilla.

224.254.   Defendants acted with reckless indifference to Mrs. Chinchilla's rights.

225.255.   As a direct and proximate result of Defendants' conduct, Mrs. Chinchilla is entitled to punitive damages under the NYSHRL in an amount to be determined at trial.

226.256.   Mrs. Chinchilla is further entitled to an award of attorney's fees, expert fees, and other costs under the NYSHRL. Executive Law § 297(10).

### THIRD CAUSE OF ACTION

**(Failure to Engage in a Cooperative Dialogue in Violation of the NYCHRL)**

227.257.   Plaintiff reincorporates the foregoing as if fully written herein.

228.258.   The NYCHRL requires employers to engage in a cooperative dialogue with an employee who requests a reasonable accommodation on the basis of religion.

229.259.   The NYCHRL provides a separate cause of action against employers who fail to engage in a cooperative dialogue with employees, like Mrs. Chinchilla, who request a reasonable accommodation:

It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation: (1) For religious needs as provided in subdivision 3 of this section.

N.Y.C. Admin. Code § 8-107 (28)(a).

230.260.   Defendants were obligated to engage in a cooperative dialogue with Mrs. Chinchilla regarding his need for a reasonable accommodation to the Vaccine Mandate.

261.       Defendants refused to engage in any cooperative dialogue and simply denied Mrs. Chinchilla's request for a reasonable accommodation.

262.       The Director of the NYPD's Equal Employment Opportunity Division instructed reviewers of religious accommodation requests that they did not need to communicate with applicants before denying their requests for accommodation.

263.       Defendants own established reasonable accommodation policies, in place before the Vaccine Mandate, required Defendants to engage in a cooperative dialogue with employees who requested religious accommodations.

264.       The Defendants were on notice that the law required them to engage in a cooperative dialogue with employees who requested religious accommodations.

231.265.   At least one NYPD employee complained to the Citywide Panel that the NYPD was instructing reviewers of accommodation requests to the Vaccine Mandate that they did not need to engage in cooperative dialogue in violation of the NYCHRL.

232.266.   Defendants violated N.Y.C. Admin. Code § 8-107 (28)(a)(1) by failing to engage in a cooperative dialogue with Mrs. Chinchilla regarding his request for a reasonable accommodation to the Vaccine Mandate.

233.267.   The NYCHRL prohibits Defendants from denying Mrs. Chinchilla's request for a reasonable accommodation until it engaged in a cooperative dialogue with her:

The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

234.268.   However, Defendants violated the NYCHRL by denying Mrs. Chinchilla's request for a reasonable accommodation without first engaging in a cooperative dialogue.

235.269.   Mrs. Chinchilla sufficiently articulated sincerely held religious beliefs that conflict with the Vaccine Mandate.

236.270.   Mrs. Chinchilla was fully capable of satisfying the essential requisites of her job with a reasonable accommodation.

237.271.   The NYPD and the Citywide Panel never had *any* communications with Mrs. Chinchilla regarding her accommodation needs before denying her reasonable accommodation request.

238.272.   Defendants never had any communications with Mrs. Chinchilla regarding any potential accommodations that may address her accommodation needs before denying her reasonable accommodation request.

239.273.   Defendants never had any communications with Mrs. Chinchilla regarding alternatives to her accommodation request before denying her reasonable accommodation request.

240.274.   Defendants never had any communications with Mrs. Chinchilla regarding the difficulties that any potential accommodations may pose to Defendants before denying her reasonable accommodation request.

241.275.   Defendants never had any communication with Mrs. Chinchilla regarding her religious conflict with the Vaccine Mandate before denying her reasonable accommodation request.

242.276.   As a direct and proximate result of Defendants' unlawful discriminatory practices, Mrs. Chinchilla has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which she is entitled to an award of monetary damages which exceeds the jurisdictional limits of all lower courts, and other relief

243.277.   As a direct and proximate result of Defendants' unlawful discriminatory practices, Mrs. Chinchilla suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

244.278.   As a direct and proximate result of Defendants' violations of the NYCHRL, N.Y.C. Admin. Code § 8-107 (28)(a)(1) and § 8-107 (28)(e), Mrs. Chinchilla is entitled to declaratory and injunctive relief and Defendants are liable to Mrs. Chinchilla for compensatory damages, including pain and suffering, and punitive damages in an amount to be determined at trial  pursuant to N.Y.C. Admin. Code §8-502(a), and for costs and reasonable attorney's fees pursuant to N.Y.C. Admin. Code §8-502(g).

**FOURTH CAUSE OF ACTION**

**(Violation of the Free Exercise Clause of the
First Amendment of the United States Constitution)**

~~245.~~279.  Plaintiff reincorporates the foregoing as if fully written herein.

~~246.~~280.  The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government's burdening of a sincerely held religious belief. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I

~~247.~~281.  The Supreme Court has held that "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). A non-neutral or non-generally applicable law must be the least restrictive means available to further a compelling government interest in order to withstand strict scrutiny.

~~248.~~282.  Mrs. Chinchilla's sincerely held religious beliefs prohibit her from receiving the COVID-19 vaccine.

~~249.~~283.  The Defendants' Vaccine Mandate substantially burdens Mrs. Chinchilla's free exercise of religion, in that compliance would require violation of his religious beliefs as the sole alternative to suffering adverse employment actions, including LWOP and termination.

~~250.~~284.  The Defendants' refusal to accommodate Mrs. Chinchilla's religious beliefs substantially burdens Mrs. Chinchilla's free exercise of religion.

~~251.~~285.  Defendants' refusal to accommodate the Mrs. Chinchilla and other employees' religious beliefs created coercive pressure on Mrs. Chinchilla to change or violate h~~er~~is sincerely held religious beliefs.

252.286.  The Defendants' Vaccine Mandate is not neutral or generally applicable.

253.287.  The Defendants retain sole discretion to grant exemptions to the Vaccine Mandate.

288.  Defendants had substantial unbridled discretion over which religious exemption requests would be granted and which would be denied based upon value judgments on the applicants' beliefs.

289.  In a federal lawsuit against the City – New Yorkers for Religious Liberty v. the City of New York - Eric Eichenholtz, the architect of the Citywide Panel and Chief Assistant Corporation Counsel for Employment Policy and Litigation at the Office of the New York City Corporation Counsel, testified that Citywide Panel decisions are truly "individualized" and are constrained by no objective criteria.

290.  The Defendants created a formal mechanism for granting exemptions to the Vaccine Mandate whereby applicants were directed to apply to their respective agencies and then the Citywide Panel.

291.  The face of the Vaccine Mandate itself – in the Order of the New York City Commissioner of Health and Mental Hygiene – provides for religious accommodations.

292.  The Defendants have granted religious exemptions to the Vaccine Mandate.

293.  Defendants arbitrarily denied Plaintiff's religious exemption request based upon a discriminatory rejection of her religious beliefs.

254.294.  The Defendants permitted NYPD employees and other City Workers to continue working in person while forcing Plaintiff out of her job.

255.295.    The Defendants have granted medical exemptions to the Vaccine Mandate.

256.296.    Defendants' Vaccine Mandate is not neutral because the Defendants have refused to accept sincerely held religious beliefs that conflict with the Vaccine Mandate.

297.        Defendants' Vaccine Mandate is not generally applicable because it provides for reasonable accommodations, including religious and medical exemptions.

298.        Defendants have unbridled discretion over which religious beliefs are entitled to religious exemptions and which are not.

299.        Defendants individually assessed the reasons that Plaintiff refused the COVID-19 vaccination and decided her religious beliefs are not worthy of a religious exemption.

300.        The Defendants refused to acknowledge the Plaintiff's and other City Workers' religious objections based upon the connection between abortion and the production of the COVID-19 vaccines.

301.        Defendants refuse to acknowledge the religious nature of an objection to the COVID-19 vaccination, mischaracterizing Plaintiff's (and other City Workers') objections as merely personal preferences.

302.        Defendants passed judgment on Plaintiff's religious beliefs and presupposed the illegitimacy of those beliefs and practices.

303.        Defendants incorrectly compared Plaintiff's belief to those of other Christians.

304.	Defendants denied applicants whose views they disagreed with – particularly, the Plaintiff's objection to vaccination using aborted fetal cell lines in testing, production, or development.

305.	Defendants improperly preferred certain religious sects when granting religious exemptions to the Vaccine Mandate.

306.	Defendants gave preferential treatment to similarly situated employees who also remained unvaccinated for religious reasons.

307.	Defendants singled out Plaintiff by refusing to acknowledge that her beliefs are religious because they are based on an objection to abortion, while allowing others with religious objections not related to abortion or from certain religious sects to continue working.

308.	Defendants are hostile to Plaintiff's religious beliefs because she is not a member of one of the Defendants' "preferred sects".

309.	The Defendants limited religious exemptions to applicants who belonged to established, organized religions which had a long-standing public history of opposition to vaccination. The Mayor admitted this in a statement to the Press:

**Question:** Could you maybe go into some of that criteria so I know like with religious exemptions, for example, there have been leaders such as the Pope that have said it's okay you know, to get – for Catholics to get the vaccine. So, are there any religious exemptions that you know of?
**Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope Francis has been abundantly clear that there's nothing in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have been getting vaccinated for years and decades. There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.

257. *Transcript: Mayor de Blasio Holds Media Availability*, City of New York, September 23, 2021, available at https://www.nyc.gov/office-of-the-mayor/news/644-21/transcript-mayor-de-blasio-holds-media-availability.

258.310. Defendants' rejection of Mrs. Chinchilla's religious beliefs as merely "personal or philosophical" demonstrates a hostility to religion.

311. The Defendants improperly segregated Plaintiff from others with religious objections to the Vaccine Mandate by allowing applicants with certain religious beliefs to continue working while testing, but placing Plaintiff on LWOP and scheduling her termination.

312. Defendants demonstrated animus to Plaintiff's specific religious practices in burdening her religious exercise while allowing other religious objectors to continue working.

313. Defendants implemented the Vaccine Mandate in a discriminatory manner by implementing denominational preferences for certain religious sects, such as Christian Scientists and other sects that the Defendants recognize as established.

314. The Defendants instructed the NYPD to deny religious objections based on the use of aborted fetal cell lines in vaccine testing or development.

315. The Defendants instructed the Citywide Panel to deny religious objections based on the use of aborted fetal cell lines in vaccine testing or development.

316. In discovery in New Yorkers for Religious Liberty v. City of New York, the City produced an email from a member of the Citywide Panel to Eichenholtz, architect of the Citywide Panel, stating: "I'm mostly seeing folks expressing their view that all Covid

vaccines contain or were tested using fetal stem cells… My understanding from our conversation is that those would not constitute sincerely held religious beliefs, but what would?" Eichenholtz did not deny that this was the instruction to Citywide Panel members in his e-mail response.

317. Defendants arbitrarily rejected Plaintiff's application for a religious exemption because she cited an objection to the use of aborted fetal cell lines.

318. Defendants substituted their judgment about what Plaintiff's faith requires.

319. The New York City Commissioner of Mental Health and Hygiene provided a letter to the Citywide Panel in which he stated that applicants' concerns over the use of aborted fetal cell lines were invalid.

320. Defendants denied Plaintiff based on the rejection of the verity of her religious beliefs.

~~259.~~321. The Defendants do not have a compelling interest in requiring Mrs. Chinchilla to violate her sincerely held religious beliefs as a result of the inconclusive functionality of the presently-available COVID-19 vaccines in preventing viral transmission, carry, and illness.

~~260.~~322. Moreover, Defendants' interest in mandating Mrs. Chinchilla to be vaccinated cannot be compelling where other employees are provided reasonable accommodations for both religious and medical reasons.

~~261.~~323. Less restrictive means to reduce the spread of COVID-19 are available to the Defendants, including masking, PCR testing, antibody testing, temperature checks, among others. As such, the Defendants' COVID-19 vaccination mandate fails strict scrutiny.

262.324. Defendants' failure to accommodate Mrs. Chinchilla and all other employees' religious beliefs fail to provide the least restrictive means of furthering any stated interest.

263.325. The Defendants previously had a "Test or Vax" policy in place, where unvaccinated employees were permitted to submit weekly PCR testing.

264.326. Defendants' refusal to accommodate, and subsequent scheduled termination of Mrs. Chinchilla imposed discipline on Mrs. Chinchilla for exercising her right to free exercise of heris religious beliefs.

265.327. Defendants' actions injured and continue to injure Mrs. Chinchilla by chilling heris religious activity through the withholding of pay, discipline, constructive termination, and the threat of termination.

266.328. Mrs. Chinchilla is entitled to a declaration that the Defendants violated her First Amendment right to the free exercise of religion. Mrs. Chinchilla is entitled to equitable relief. Further, Mrs. Chinchilla is entitled to reasonable costs of this lawsuit, including attorneys' and experts' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as well as compensatory damages, including pain and suffering, and punitive damages against the Defendants, including emotional distress and pain and suffering in an amount to be proven at trial. The U.S. Supreme Court has held that individual damages are available against violators. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

267.329. A court must consider: "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in

question." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021) (quoting *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2013)).

268.330.   Defendants' violation of Mrs. Chinchilla's religious exercise evidenced an indifference to and a reckless disregard of her religious rights.

**<u>Prayer for Relief</u>**

**WHEREFORE**, the Plaintiff prays that this Court grant judgment to her containing the following relief:

A.      A declaratory judgment that the Defendants' failure to accommodate and failure to engage in a cooperative dialogue with Plaintiff are unlawful discriminatory practices under the New York City Human Rights Law and the New York State Human Rights Law;

B.      A declaratory judgment that the Defendants' actions have violated the Plaintiff's First Amendment right to the Free Exercise of religion;

C.      An award to Plaintiff of compensatory damages for the Plaintiff's lost wages, back pay, front pay, overtime, and benefits, in an amount to be determined at trial;

D.      An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by her in an amount to be determined at trial;

E.      An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under 42 U.S.C. §1988, the New York City Human Rights Law, and New York State Human Rights Law;

F.      An award to Plaintiff for punitive damages in an amount to be determined at trial, in order to punish the Defendant's intentional unlawful discriminatory practices;

G. An order for civil fines and penalties pursuant to New York Executive Law § 297(9);

H. An award of pre- and post-judgment interest on all amounts awarded to the Plaintiff at the highest rates and from the earliest dates allowed by law on all causes of action;

I. Such other and further relief this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local Rules, Plaintiff demands trial by jury for all the issues leaded herein so triable.

Dated: Staten Island, New York
~~October 3, 2023~~January 19, 2024

Respectfully submitted,

Christina Martinez, Esq.
Law Offices of Christina Martinez
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com
***Attorney for Plaintiff***

45