UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY CHINCHILLA,

                              Plaintiff,

              v.                                                   23 Civ. 8986 (DEH)

NEW YORK CITY POLICE DEPARTMENT,                    **OPINION AND ORDER**
et al.,

                              Defendants.

DALE E. HO, United States District Judge:

    In this action, Plaintiff Nancy Chinchilla sues Defendants City of New York (the "City")

and the New York City Police Department (the "NYPD") regarding the end of her employment

as a police officer.  Pursuant to a citywide policy, all City employees were required to receive the

COVID-19 vaccine.  Plaintiff applied for a religious exemption to the policy, which the NYPD

denied.  After an unsuccessful appeal of the denial to a citywide panel on accommodations to the

vaccine requirement, Plaintiff retired from the NYPD.  This suit followed.  Plaintiff alleges

religious discrimination under state and city anti-discrimination law and a violation of the federal

constitution's Free Exercise Clause.  Defendants move to dismiss the First Amended Complaint

(the "FAC"), the operative pleading.  *See* ECF No. 28.  For the reasons given below, the motion

is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

    The following facts are taken from the FAC and are assumed to be true for purposes of

adjudicating Defendants' motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[1]

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation
marks, and ellipses unless otherwise indicated.  All references to Rules are to the Federal Rules
of Civil Procedure unless otherwise indicated.

Plaintiff is a Pentecostal Christian.  FAC ¶ 20, ECF No. 25.  Plaintiff and her husband were long-time members of the Yorktown Assembly of God, where they were active volunteers and a vital part of their church community.  *See id.* ¶¶ 23, 76.  As part of her religious beliefs, Plaintiff refuses all vaccinations and does not vaccinate her children.  *Id.* ¶¶ 12, 19-20.

Plaintiff was employed by the NYPD from 2004 to 2022.  *Id.* ¶ 11.  Plaintiff worked in an administrative role in the Curriculum Unit at the Police Academy, responsible for keeping the curriculum taught to NYPD recruits up to date and for teaching NYPD recruits.  *Id.* ¶¶ 25-26.  She also worked other assignments, such as parades and special events, as needed.  *Id.* ¶ 41.  When Plaintiff was hired and throughout her time working with the NYPD until the events at issue in this lawsuit, vaccination was not a condition of Plaintiff's employment.  *Id.* ¶¶ 24, 29.

After the COVID-19 pandemic began, Plaintiff worked in person as an essential worker.  *Id.* ¶¶ 32, 38.  On October 20, 2021, the City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate (the "Vaccine Mandate"), requiring all City workers to receive a COVID-19 vaccine by October 29, 2021, while also providing for reasonable accommodations.  *Id.* ¶¶ 42, 45.  In a written policy regarding the Vaccine Mandate and accommodation process, the City stated that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation."  *Id.* ¶ 47.

On October 21, 2021, Plaintiff submitted a request for an accommodation to the NYPD's Equal Employment Opportunity Division ("EEOD"), on the grounds that vaccination would violate her sincerely held religious beliefs.  *Id.* ¶ 56.  Plaintiff's application included the NYPD's form application and a five-page letter describing her religious beliefs and how they conflict with COVID-19 vaccination.  *Id.* ¶¶ 57-58, 74.  Her application stated that all COVID-19 vaccines available at the time of her request used aborted fetal cell lines in their manufacture or testing,

and explained that receiving the vaccine would violate her religious beliefs regarding abortion. *Id*. ¶¶ 59, 63.  She also submitted a letter from her pastor explaining her deep involvement with her church.  *Id.* ¶¶ 75-76.

On December 20, 2021, the City issued a "Guidance on Accommodations for Workers," which included a checklist "intended to guide employers and managers in evaluating requests . . . for reasonable accommodations or exemptions" to the Vaccine Mandate.  *Id.* ¶ 77.  That guidance provided examples of qualifying reasons for a religious accommodation, including that a "[w]orker says that they cannot take the vaccine because it was developed and/or tested using fetal cells that the worker is concerned may have been the result of an abortion."  *Id.*[2]

On February 8, 2022, the NYPD denied Plaintiff's accommodation request.  *Id.* ¶ 78; *accord* NYPD Denial of Accommodation Req., ECF No. 33-2.[3]  The denial consisted of a pre-printed form in which three options were checked: "Objection was personal, political, or philosophical;" "Written statement does not set forth how religious tenets conflict[] with the vaccine requirement;" and "No demonstrated history of vaccination/medicine refusal."  NYPD Denial of Accommodation Req.  The NYPD's denial letter indicated that Plaintiff could file an appeal to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel

---

[2] The Court declines to take judicial notice of a "Whistleblower's Affirmation" regarding the process used to evaluate religious accommodation requests, *see* FAC ¶ 83, because, among other things, the characterization of this document is not "a fact that is not subject to reasonable dispute."  Fed. R. Evid. 201(b).

[3] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *accord Vasquez v. City of New York – Off. of Mayor*, No. 22 Civ. 5068, 2024 WL 1348702, at *3 (E.D.N.Y. Mar. 30, 2024) (considering a denial of a religious accommodation request on a Rule 12(b)(6) motion, because the denial was integral to a complaint alleging religious discrimination).

("Citywide Panel"), which Plaintiff did.  *Id.*; FAC ¶¶ 88, 90.  On March 14, 2022, the Citywide

Panel denied Plaintiff's request for a reasonable accommodation, stating only that her application

"Does Not Meet Criteria."  FAC ¶ 92-93.  The Citywide Panel's denial informed Plaintiff that

she would be put on Leave Without Pay within seven calendar days if she did not submit proof

of COVID-19 vaccination.  *Id.* ¶¶ 92-94.

On or about March 15, 2022, the NYPD notified Plaintiff she would be placed on Leave

Without Pay, effective March 21, if she did not comply with the Vaccine Mandate.  *Id.* ¶ 97.

Plaintiff was further informed that the City would terminate her employment on March 25 if she

failed to submit proof of at least one dose of the vaccine.  *Id.*  Plaintiff used her accrued leave

time and retired from the NYPD on April 13, 2022.  *Id.* ¶ 99.

On September 28, 2022, Plaintiff filed a complaint against the NYPD with the New York

State Division of Human Rights.  *Id.* ¶ 109.  On May 3, 2023, the New York State Division of

Human Rights dismissed Plaintiff's complaint at her request and annulled the election of

remedies so that she could bring this action.  *Id.* ¶ 110.  On October 12, 2023, Plaintiff filed this

suit.  *See* Compl., ECF No. 1.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Sacerdote v. N.Y. Univ.*,

9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "In

assessing the complaint, [a court] must construe it liberally, accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Id.* at 106-07.

However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of

the elements of a cause of action.'"  *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.   DISCUSSION

The FAC alleges four claims: a claim for violation of the Free Exercise Clause of the United States Constitution, two claims for failure to accommodate Plaintiff's religious beliefs under state and city law, and a claim for failure to engage in a cooperative dialogue regarding accommodation under city law.  Defendants' motion to dismiss these claims is granted in part for the reasons given below.  The claims for failure to accommodate under state and city law, as pleaded against the City, survive; all other claims are dismissed.

## A.   Free Exercise Claim

Defendant's motion to dismiss the Free Exercise claim is granted.  The FAC does not plead sufficient facts to establish that the Vaccine Mandate, the procedures used to evaluate requests for religious exemptions, or the application of these procedures to Plaintiff, violated the free exercise of Plaintiff's religion.

"The religion clauses of the First Amendment, applicable to the states through the Fourteenth Amendment, provide that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023).  "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable."  *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021) (discussing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990)).  "Neutral and generally applicable laws are subject only to rational-basis review."  *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021).

### 1.       *Controlling Precedent Regarding Religious Exemptions to Vaccine Mandates*

Religious exemptions to vaccine mandates are not constitutionally required.  *See Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (per curiam); *accord We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021) (same).  But if a government entity chooses to offer exemptions to vaccine mandates, it must do so in a non-discriminatory way.  In *Kane*, a challenge brought by New York City public school teachers and administrators to the City Department of Education's (the "DOE") COVID-19 vaccine mandate, the Second Circuit held that the mandate (which provided for medical and religious exemptions) was facially neutral and generally applicable.  *Id.* at 164 & n.12.  But it also held, on the plaintiffs' as-applied challenge, that the procedures used to review religious accommodation requests (which are distinct from those at issue in this lawsuit) were neither neutral nor generally applicable, and thus were subject to strict scrutiny.  *Id.* at 167-69.

The DOE's exemption procedures were not neutral with respect to religion because they invited inquiry into "the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*."  *Id.* at 168 (emphasis in original).  The DOE's standards for an exemption provided that exemption requests should be denied "where the leader of the religious organization has spoken publicly in favor of the vaccine . . . or where the objection is personal, political, or philosophical in nature."  *Id*.  The plaintiffs had introduced evidence that the DOE denied their requests for exemptions because other members of the same religious sect chose to get vaccinated.  *Id*.  The Circuit held that the exemption process was not neutral and thus was subject to strict scrutiny, because it invited reviewers to determine the objective validity of an exemption-seeker's interpretation of their religion by reference to another person's religious beliefs.  *Id.* at 168-69.

6

The Second Circuit further held that strict scrutiny was appropriate for a second reason: the exemption procedure was inconsistently applied and thus not generally applicable. While the plaintiffs were denied exemptions based on the fact that other members of their sect had received vaccinations, the plaintiffs had introduced evidence that other applicants had received exemptions even though the leader of their religion endorsed vaccination. *Id.* at 169. Based on that evidence, the Circuit concluded that the exemption process was not generally applicable to those seeking religious accommodation. *Id.* In sum, because the application process was neither neutral nor generally applicable, it was subject to strict scrutiny, under which it failed. *Id.*

## 2. Application

In light of *Kane*, Plaintiff does not challenge the Vaccine Mandate as a whole, instead arguing that "Defendants' refusal to accommodate Plaintiff is what substantially burdened her free exercise of religion." Mem. of L. in Opp'n to Mot. to Dismiss ("Opp'n") 4, 6, ECF No. 33 ("[T]his action does not challenge the constitutionality of the Vaccine Mandate itself."). She brings only as-applied challenges to the NYPD's exemption procedures, arguing that they merit strict scrutiny, as the Second Circuit determined with respect to DOE's exemption procedures in *Kane*.

But the FAC does not contain allegations analogous to the facts in *Kane* that made the DOE's procedures subject to strict scrutiny. The FAC alleges that the City issued guidance for employers stating that an objection based on the use of fetal cells in the development and testing of vaccines may qualify for an accommodation. FAC ¶ 77. It further alleges that the NYPD's EEOD Director gave a training to those reviewing accommodation requests in which he stated that "judgments on religious accommodation requests were 'subjective' and that the reviewers would have to decide if the applicant had a sincerely held religious belief." *Id.* ¶ 79. He further

stated that "very few religious accommodations would be approved" and that "applications which cited use of aborted fetal cell lines as an objection to the COVID-19 vaccine should be denied if the applicant failed to also state an objection to medications such as Tylenol and Pepto Bismol." *Id.* ¶¶ 80-81.

These allegations do not establish that the NYPD's exemption procedures are not neutral or generally applicable. Unlike the "exceedingly narrow" situation presented by *Kane*, 19 F.4th at 167, Plaintiff's religious beliefs were not evaluated for their objective validity by comparison to those of other members of her faith (so there is no analogous allegation of non-neutrality), nor does Plaintiff allege that the NYPD only sometimes adhered to its stated evaluation policies (and so there is no analogous allegation of inconsistent application). *See Collins v. City Univ. of N.Y.*, No. 21 Civ. 9544, 2023 WL 1818547, at *9 n.7 (S.D.N.Y. Feb. 8, 2023) ("[H]ere, unlike in *Kane*, the sincerity of Collins's religious beliefs was not evaluated against someone else's publicly expressed religious views, nor does Collins allege that CUNY sometimes strictly adhered to its evaluation policies and at other times apparently ignored them.").

Instead, the allegations of the FAC describe a process intended to determine the *sincerity* of an applicant's religious beliefs—a permissible exercise for an employer to undertake. *See Kane v. de Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021) (holding that requests for information regarding previous vaccinations, other substances an exemption applicant finds foreign or impermissible, the applicant's use of other medications developed using fetal cell lines, and other examples of the employee's acts in alignment with their religious beliefs outside the COVID-19 context were "geared towards developing a factual basis for reaching a conclusion as to whether any particular Plaintiff's beliefs are sincerely held and religious in nature, both of which are permissible inquiries and questions of fact"). Such a process may

legitimately include questions about the use of other medications derived from fetal cell lines without running afoul of the First Amendment.  *See Bonilla v. City of New York*, No. 22 Civ. 7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("[T]he panel asked appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held, not whether they were objectively legitimate."); *Mora v. N.Y. State Unified Ct. Sys.*, No. 22 Civ. 10322, 2023 WL 6126486, at *11 (S.D.N.Y. Sept. 19, 2023) (similar); *Ferrelli v. N.Y. Unified Ct. Sys.*, No. 22 Civ. 68, 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022) ("[Q]uestioning [about other products tested with fetal cell lines] does not presuppose the illegitimacy of concerns about use of fetal cell lines; it merely seeks to determine whether such concerns are the applicant's true motivation for seeking an exemption."); *Ventresca-Cohen v. DiFiore*, 205 N.Y.S.3d 532, 535 (App. Div. 2024) ("[An employer] could and did rationally conclude that an applicant's continued and/or contemplated use of other medications or vaccinations tested on fetal cell lines . . . while refusing to take the COVID–19 vaccination on that very basis, reflected an inconsistency undermining the sincerity of that applicant's religious beliefs.").

A statement from the NYPD's EEOD Director that "very few" religious exemption requests would be granted is also insufficient to establish that the exemption procedures are not neutral or generally applicable.  FAC ¶ 80.  Without allegations regarding the number of non-religious exemptions granted or Defendants' attitude towards how many non-religious exemption requests it intended to grant, this statement seems to reflect Defendants' general disinclination to offer *any* exemptions to the COVID-19 vaccine requirement—which they are not obligated to do.  *See Phillips*, 775 F.3d at 543.  In any event, without some basis of comparison, this statement does not demonstrate disparate or unfavorable treatment of religious exemptions

specifically; nor does it tend to show that exemptions were granted inconsistently (i.e., in a manner that was not generally applicable).

Finally, the FAC alleges that Defendants specifically targeted Plaintiff due to her specific religious beliefs. *See, e.g.*, FAC ¶ 293 ("Defendants arbitrarily denied Plaintiff's religious exemption request based upon a discriminatory rejection of her religious beliefs."), ¶ 316 ("Defendants demonstrated animus to Plaintiff's specific religious practices in burdening her religious exercise while allowing other religious objectors to continue working."). Even when a law is otherwise permissible, a government entity is still "obliged under the Free Exercise Clause to proceed in a manner neutral toward and tolerant of . . . religious beliefs." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 636, 638-39 (2018) (reversing a decision of "an adjudicatory body deciding a particular case" under an otherwise permissible law, because of statements that evidenced hostility to a party's religious beliefs) ("[The] government has no role in deciding or even suggesting whether the religious ground for Phillips' conscience-based objection is legitimate or illegitimate."). When the government demonstrates "hostility, animosity, distrust, [or] a negative normative evaluation" of religious beliefs, it "violates the neutrality prong of *Smith*," subjecting its action to strict scrutiny. *We The Patriots, Inc.*, 76 F.4th at 149.[4]

The FAC does not include sufficient, non-conclusory allegations to establish that hostility to Plaintiff's religion animated the denial of her accommodation request. At various points, it

---

[4] In addition, decisions motivated solely by hostility to religion can run afoul of the Free Exercise Clause as lacking a rational basis. *See Fortress Bible Church v. Feiner*, 694 F.3d 208, 220-21 (2d Cir. 2012) (affirming a holding that "the Town's proffered rational bases were not sincere and that it was instead motivated solely by hostility toward the Church *qua* church," and concluding that as a result, "the Town lacked a rational basis for delaying and denying the Church's project and therefore violated the Church's Free Exercise rights").

offers conclusory statements regarding Defendants' discriminatory motivation.  *See, e.g.*, FAC ¶ 293 ("Defendants arbitrarily denied Plaintiff's religious exemption request based upon a discriminatory rejection of her religious beliefs."), ¶ 302 ("Defendants individually assessed the reasons that Plaintiff refused the COVID-19 vaccination and decided her religious beliefs are not worthy of a religious exemption."), ¶ 306 ("Defendants passed judgment on Plaintiff's religious beliefs and presupposed the illegitimacy of those beliefs and practices."), ¶ 309 ("Defendants improperly preferred certain religious sects when granting religious exemptions to the Vaccine Mandate."), ¶ 312 ("Defendants are hostile to Plaintiff's religious beliefs because she is not a member of one of the Defendants' 'preferred sects'."), ¶ 316 ("Defendants demonstrated animus to Plaintiff's specific religious practices in burdening her religious exercise while allowing other religious objectors to continue working.").  However, on a motion to dismiss, a plaintiff must offer more than "bare assertions" and "conclusory allegations."  *Iqbal*, 556 U.S. at 681; *accord Bonilla*, 2023 WL 8372859, at *5 ("Although Bonilla alleges that hostility toward her religious beliefs was the real reason for the denial [of her religious accommodation], these bald assertions are insufficient to state a claim."); *Vasquez*, 2024 WL 1348702, at *10 (similar).

The FAC also includes allegations regarding a press interview given by then-Mayor de Blasio regarding religious exemptions to the Vaccine Mandate, in which he stated a religious objection is "not something someone can make up individually [and] [i]t has to be, you're a standing member of a faith that has a very, very specific long-standing objection."  FAC ¶ 313. However, the FAC does not include allegations regarding the beliefs of any NYPD or Citywide Panel personnel—i.e., the individuals who actually reviewed Plaintiff's application.  *Cf. Masterpiece Cakeshop*, 584 U.S. at 639 (finding that statements made by Commissioners

adjudicating a dispute regarding one of the parties' religious beliefs suggested that the Commission's proceeding was not neutral).  Moreover, the Mayor's comments are most naturally read to speak to City's interest in assuring the sincerity of a religious exemption claimed, which, as discussed, is permitted.  *See Kane*, 575 F. Supp. 3d at 442 (stating that a request for information as to an employee's vaccination record and history of other relevant medical treatments "is geared towards developing a factual basis for reaching a conclusion as to whether any particular Plaintiff's beliefs are sincerely held and religious in nature").  In essence, Plaintiff relies on the fact of the denial of her religious exemption request as evidence of discrimination against her beliefs, but that is not enough.  *See Mora v. N.Y. State Unified Ct. Sys.*, No. 22 Civ. 10322, 2023 WL 6126486, at *11 (S.D.N.Y. Sept. 19, 2023) ("That plaintiff's exemption request was denied does not obviate the Vaccine Mandate's neutrality."), *appeal filed*, No. 23 Civ. 7231 (2d Cir. Oct. 2, 2023).

Because Plaintiff offers no basis to conclude that the Vaccine Mandate's exemption process, as applied to her, was not neutral or generally applicable, it is subject to rational basis review.  *See Fulton*, 593 U.S. at 533; *accord We The Patriots USA, Inc.*, 17 F.4th at 290.  Even accepting the allegations of the Complaint as true—including, *inter alia*, the sincerity of Plaintiff's religious beliefs—Plaintiff does not establish that Defendants lacked any conceivable rational basis in denying her application for a religious exemption.  *United States v. Amalfi*, 47 F.4th 114, 124-25 ("[C]hallengers have the burden [under rational basis review] to negative every conceivable basis which might support [a challenged decision].").  Accordingly, under the "extremely deferential standard" of rational basis, *id.* at 125, Defendants' decision not to grant Plaintiff an exemption to the Vaccine Mandate passes constitutional muster.

Accordingly, Plaintiff's Free Exercise claim fails.  Defendants' motion to dismiss Claim Four of the FAC is granted.

## B.     NYSHRL/NYCHRL Accommodation Claims

The First and Second Causes of Action allege failure to accommodate under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"), respectively.[5]  Defendants' motion to dismiss these claims is granted to the extent that they are alleged against the NYPD and denied to the extent they are alleged against the City.

The NYSHRL makes it unlawful "[f]or an employer . . . because of an individual's . . . creed . . . to discriminate against such individual . . . in terms, conditions, or privileges of employment."  N.Y. Exec. L. § 296(1)(a).  Such discrimination includes "impos[ing] upon a person as a condition of obtaining or retaining employment . . . , any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion."  *Id.* § 296(10)(a).  The NYCHRL similarly makes it unlawful "[f]or an employer . . . because of the . . . creed . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8-107(a).  It continues:

> It shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person.

---

[5] Although Plaintiff's sole federal claim is dismissed, subject matter jurisdiction exists over Plaintiff's state law claims.  Plaintiff is a citizen of Arizona, and Defendants are citizens of New York, *see* FAC ¶¶ 10, 13-14, meaning there is complete discovery among the parties, and Plaintiff alleges damages in excess of $75,000, *see id.* ¶ 164.  *See* 28 U.S.C. § 1332.

*Id.* § 8-107(3).  Under the NYCHRL, a reasonable accommodation is an "accommodation to an employee's or prospective employee's religious observance or practice" that does not cause the employer "undue hardship."  *Id.*  Following a set of 2019 amendments to the NYSHRL, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  Because Plaintiff's NYSHRL claims accrued after the most recent amendments, they "rise and fall with [his] NYCHRL claims."  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 345 (S.D.N.Y. 2021) ("[T]he amended NYSHRL adopts the same standard as the NYCHRL."), *rev'd on other grounds*, 2024 WL 2813563 (2d Cir. June 3, 2024).

### 1.    *Prima Facie Case*

"To make out a prima facie case under NYCHRL [and NYSHRL], Plaintiff must demonstrate that (1) he has a bona fide religious belief conflicting with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement."  *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 512-13 (S.D.N.Y. 2023); *accord Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 (S.D.N.Y. 2021) (articulating a parallel standard under the NYSHRL).[6]

Plaintiff has alleged she has a bona fide religious belief.  The FAC alleges that Plaintiff is a Pentecostal Christian, *see* FAC ¶ 20, and that, as part of her religious practices, she refuses all vaccinations for herself and for her children, *see id.* ¶¶ 20-21.  The FAC further alleges that the

---

[6] The NYCHRL provides that for purposes of its cause of action, a plaintiff may bring suit "even if that person's only injury is the deprivation of a right granted or protected [by the NYCHRL]." N.Y.C. Admin. Code § 8-502(h)(2).  It is unclear how, if at all, this provision relates to the requirement that an employee be disciplined to establish a claim for failure to accommodate; because the FAC adequately pleads that Plaintiff was constructively discharged, *see infra*, it is unnecessary to resolve this issue.

three primary producers of the COVID-19 vaccines used aborted fetal cell lines in manufacturing the vaccines and that, because of Plaintiff's religious objection to abortion, her receiving any of the COVID-19 vaccines available would represent, to her, cooperation with abortion and a sin against God.  *See id.* ¶¶ 64-68.  The FAC also alleges that Plaintiff believes her blood is sacred and that vaccines would taint her blood.  *See id.* ¶¶ 70-73.  On a motion to dismiss, when all factual statements must be accepted as true, these allegations are sufficient to allege a bona fide religious belief.  *See Ventresca-Cohen*, 205 N.Y.S.3d at 534 (finding that employee objections to COVID-19 vaccines "revealed two primary reasons for seeking the religious exemption: (1) the connection between fetal cells and the testing of COVID–19 vaccines; and (2) a concern about the sanctity or purity of the applicant's body" and that an employer could inquire into "whether the belief was religious in nature and sincerely held," but not "the legitimacy of an applicant's religious beliefs"); *Ferrelli*, 2022 WL 673863, at *8 ("[Asking questions about an applicant's use of products tested on fetal cell lines] does not presuppose the illegitimacy of concerns about use of fetal cell lines; it merely seeks to determine whether such concerns are the applicant's true motivation for seeking an exemption."); *cf. Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435-36 (S.D.N.Y. 2023) (collecting cases in which statements regarding religious objections to COVID-19 vaccinations were found to be conclusory and insufficient to establish a sincere religious objection to vaccination); *see also Thomas v. Rev. Bd.*, 450 U.S. 707, 713-14 (1981) ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.").

Defendants argue that Plaintiff's beliefs are not religious in nature.  This argument fails in light of the allegations of the FAC that connect Plaintiff's opposition to vaccination to her beliefs around abortion, and the religious nature of her objections to abortion.  *See* FAC ¶¶ 63,

67-68.  It also fails because, as Defendants acknowledge, evaluating the sincerity of a religious belief is a factual question—and questions of fact are unsuited to resolution on a motion to dismiss, where all factual allegations must be accepted.  *See* Mem. of L. in Supp. of Mot. to Dismiss ("MTD Br.") 13, ECF No. 29 ("Evaluating whether a religious belief is sincere is a threshold question of fact . . . ."); *Kane*, 575 F. Supp. 3d at 442 ("[W]hether . . . Plaintiff's beliefs are sincerely held and religious in nature . . . are permissible inquiries and questions of fact."). While the NYPD resolved this question against Plaintiff—finding that her objection was non-religious and/or not sincerely held, *see* FAC ¶ 78—the FAC alleges, in substance, that this determination was in error.  And although the NYPD denied her request in part due to the lack of demonstrated history of vaccine and medication refusal, the FAC alleges that Plaintiff refuses all vaccination for herself and her children.  *See id.* ¶¶ 20-21.[7]  These allegations can be tested in discovery, but on a motion to dismiss they must be accepted, and Plaintiff therefore satisfies the first prong of the prima facie case.

  Plaintiff also satisfies the second prong, that she informed her employer of the religious belief.  The FAC alleges that she submitted a request for accommodation that "explain[ed] in detail her religious beliefs and how they conflict with receiving the COVID-19 vaccination," accompanied by a letter from her pastor.  *See id.* ¶¶ 58, 75-76.

---

[7] Discovery may well reveal that the record before the NYPD in considering Plaintiff's exemption request did not sufficiently demonstrate consistent vaccine or medication refusal, so as to establish a sincere religious belief.  Neither party has provided Plaintiff's application for an exemption in connection with the motion, although such materials could be appropriate to consider on a motion to dismiss.  *See Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under [Rule] 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint.").  In the absence of these materials, the Court accepts the FAC's characterization of Plaintiff's application for purposes of adjudicating Defendants' motion.

Finally, Plaintiff satisfies the third prong, that she was disciplined for failing to comply with the vaccination requirement.  The FAC alleges that Plaintiff was informed that because her application for an accommodation was denied, she would be placed on leave without pay and eventually terminated; it further alleges that to preserve her pension, she resigned after using her accrued leave time.  *See id.* ¶¶ 97, 99, 107.  This is sufficient to count as discipline.  *Cf. Green v. Town of E. Haven*, 952 F.3d 394, 404 (2d Cir. 2020) (finding that giving an employee "the choice of resigning or being fired" qualified as constructive discharge, and therefore an adverse employment action, for purposes of Title VII); *see also Morris v. Schroder Cap. Mgmt. Int'l.*, 859 N.E.2d 503, 507 (N.Y. 2006) ("In some circumstances, an employee's decision to resign from his job may not be a free and voluntary choice.  Federal courts created the constructive discharge test in the context of employment discrimination cases for determining whether the employee's resignation was voluntary.").

Defendants argue that Plaintiff was not constructively discharged because Defendants did not deliberately make her working conditions so intolerable that a reasonable person would leave.  *See* MTD Br. 15-16.  This argument fails in light of the Second Circuit's ruling in *Green* that giving an employee "the choice of resigning or being fired" amounts to an adverse employment action for purposes of Title VII, 952 F.3d at 404, and the special solicitude given to plaintiffs alleging discrimination under the NYSHRL and the NYCHRL.  *See Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 109 (2d Cir. 2013) ("[I]nterpretations of . . . federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall.").

Defendants argue that vaccination was a proper condition of Plaintiff's employment, and therefore Plaintiff faced termination because she was not qualified for her position, rather than as a result of discipline.  *See* MTD Br. 14-15; Reply Mem. of L. ("Reply") 6, ECF No. 36.  This

argument fails, because the NYSHRL and NYCHRL make it an unlawful practice to "impose upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion."  N.Y. Exec. L. § 296(10)(a); *accord* N.Y.C. Admin. Code § 8-107(3) (same).  Therefore, it is unclear why calling the Vaccine Mandate a condition of employment tends to rebut Plaintiff's claims.

Defendants cite cases barring procedural due process claims (or analogous process-based claims arising out of state and local statutes), where courts distinguish failing to meet a condition of employment from being disciplined.  *See, e.g.*, *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 128-29 (E.D.N.Y. 2021) (finding that plaintiffs were unlikely to succeed on procedural due process claims because plaintiffs' termination for lack of vaccination was not disciplinary and was instead "based on [their] failure to satisfy a qualification of employment"); *Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022) ("The Court finds that the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements and all relevant state statutes."); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) ("Marciano has failed to satisfy a condition of his employment, that is, that he be vaccinated against COVID-19, and . . . [his] failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate . . . disciplinary procedures."); *O'Reilly v. Bd. of Educ.*, 185 N.Y.S.3d 14, 20 (App. Div. 2023) ("[P]etitioners' placement on leave for failure to prove vaccination, a condition of employment, is unrelated to job performance, misconduct or competence and does not constitute teacher discipline."); *Clarke v. Bd. of Educ.*, 185 N.Y.S.3d 8, 10 (App. Div. 2023) (same).  These cases, however, are not relevant because they do not involve discrimination claims.

Plaintiff has therefore established a prima facie case of failure to accommodate her religious beliefs under the NYSHRL and NYCHRL.

### 2. *Undue Burden*

The FAC alleges that Defendants could have accommodated Plaintiff by allowing her to wear a mask and routinely take COVID-19 tests.  *See* FAC ¶ 114.  Defendants argue that this proposed accommodation would have caused it an undue burden or hardship, *see* MTD Br. 16-18, meaning the accommodation would not have been reasonable under the NYSHRL and the NYCHRL.  *See* N.Y. Exec. L. § 296 (stating that an employer can demonstrate "that it is unable to reasonably accommodate the employee's . . . sincerely held religious observance or practice without undue hardship on the conduct of the employer's business," with undue hardship defined as "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace . . .)"); N.Y.C. Admin. Code § 8-107(3) (similar, and defining undue hardship with identical language).  Defendants argue that because Plaintiff worked in person with her colleagues and the general public, allowing her not to be vaccinated would pose an undue burden.  *See* MTD Br. 17.  They alternatively argue that tracking her compliance with testing would also pose an undue burden.  *See id.*

That a requested accommodation would pose an undue burden on an employer is an affirmative defense.  *See* N.Y.C. Admin. Code § 8-107(3)(b) ("The employer shall have the burden of proof to show such hardship."); N.Y. Exec. L. 296(10)(a) (allowing "the employer [to] demonstrate[] that it is unable to reasonably accommodate the employee's . . . religious observance or practice without undue hardship").  "The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."

19

*Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  However, a motion to dismiss based on an affirmative defense is permissible "where the facts necessary to establish the defense are evident on the face of the complaint."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018).

On its face, the FAC does not make clear that granting Plaintiff a religious exemption would pose an undue burden to Defendants.  The FAC instead states that the NYPD allowed other employees to test and mask.  *See* FAC ¶ 115.  If that allegation is true, this would tend to demonstrate the feasibility of offering this accommodation to Plaintiff.  Defendants cite *Algarin* for the idea that a religious exemption to a vaccine mandate would pose an undue hardship.  *See* 678 F. Supp. 3d at 509.  However, *Algarin* emerged from the context of a state rule mandating that publicly-facing healthcare personnel be vaccinated—in other words, the hardship stemmed from the fact that granting a religious exemption would cause the employer to violate state law. *See id.* ("[E]xempting Plaintiff from the mandatory vaccination requirements . . . would violate the state rule, which would necessarily create an undue hardship on [the defendants].").  In contrast, the FAC alleges that other employees were allowed to wear a mask and periodically test for COVID-19 in lieu of receiving the vaccine.  *See* FAC ¶ 115.  There is nothing in the FAC or otherwise at this stage of the litigation to suggest that granting an exemption to Plaintiff would have created an analogous conflict with state law.

Defendants also cite *We the Patriots USA, Inc.*, for the proposition that employers are not obligated to offer "a blanket religious exemption allowing [employees] to continue working at their current positions unvaccinated."  17 F.4th at 292.  This is true, but irrelevant.  The inquiry is whether allowing Plaintiff to test and mask, rather than get vaccinated, would pose an undue hardship on Defendants.  While discovery may ultimately prove that to be the case, it is not clear

from the face of the FAC that doing so would pose an undue hardship on Defendants.  *Cf.*

*Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) ("While an undue hardship is an

affirmative defense, a defendant may raise it in a pre-answer motion to dismiss when the facts

establishing it are clear.") (Title VII).

### 3.     *Remaining Arguments*

Defendants offer two final arguments.  First, they argue that Plaintiff's claims are time-

barred, because they should have been brought as an Article 78 proceeding, a special type of

process available under New York law with a shorter statute of limitations.  This argument fails.

They also argue that all claims against the NYPD must be dismissed because it is not a suable

entity.  This argument succeeds, and Plaintiff's claims against the NYPD are dismissed.

New York law allows for a special proceeding, called an Article 78 proceeding, which

provides "a uniform device for challenging the activities of an administrative agency in court."

*Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024).  "Article 78 proceedings differ

. . . from plenary civil actions in that Article 78 proceedings are characterized by a limited and

expedited summary procedure."  *Id.* at 520.  They are also subject to a four-month statute of

limitations.  N.Y. C.P.L.R. § 217(1).  Defendants argue that Plaintiff was required to raise her

arguments in an Article 78 proceeding, making her claims untimely.  *See* MTD Br. 21-23.

This argument fails.  It is true that New York courts look beyond the labels a plaintiff

uses to determine if an action should be brought as an Article 78 proceeding.  *See, e.g.*, *Hughey*

*v. Metro. Transp. Auth.*, 74 N.Y.S.3d 16, 17-18 (App. Div. 2018) ("[T]he gravamen of plaintiff's

claim as ultimately presented to the motion court was a review of the Board's administrative

determination interpreting the pension plan.  Consequently, the motion court properly concluded

that this matter was in the nature of an article 78 proceeding, and subject to the four-month

statute of limitations.").  However, the New York Court of Appeals has held that discrimination claims against public employers are subject to a three-year statute of limitations, and New York courts have continued to apply this precedent in recent years.  *See Koerner v. State*, 467 N.E.2d 232, 234-35 (N.Y. 1984) ("[A]ll the more invidious is such discrimination when it is practiced by the State. . . . Thus, the courts below erred in dismissing plaintiff's complaint as time barred, as the action was commenced well within the applicable three-year Statute of Limitations."); *Mentor v. Dep't of Educ.*, No. 155938, 2017 WL 3864871, at *2-3 (N.Y. Sup. Ct. Jan. 17, 2017) ("[A]n employee may elect to . . . seek[] a determination by the State Division of Human Rights that an employer has discriminated against the employee, from which the employee . . . may seek review in a proceeding pursuant to C.P.L.R. Article 78.  If the employee elects this remedy, then it is exclusive, but Executive Law § 297(9) also provides a separate exclusive remedy: a cause of action in any court of appropriate jurisdiction for damages . . . .").

It is insufficient that a plaintiff merely label their claims as arising under the NYSHRL or the NYCHRL.  *See Horne v. N.Y. State Dep't of Health*, 731 N.Y.S.2d 781, 781-82 (App. Div. 2001) (rejecting NYSHRL claim of disability discrimination related to the revocation of plaintiff's license to practice medicine, because it functionally sought judicial review of an agency action).  However, New York courts have held that NYSHRL claims regarding employees' requests for reasonable accommodation are substantively about the complained-of discrimination, and therefore are governed by a three-year statute of limitations.  *See Bistrisky v. N.Y. State Dep't of Corr. Servs.*, 804 N.Y.S.2d 443, 444 (App. Div. 2005) ("[T]he issue of whether an accommodation for a disability is reasonable is an integral element of the Human

Rights Law violation alleged by plaintiff.").[8]  Accordingly, Plaintiff's claims here are subject to a three-year statute of limitations, and are therefore timely.

Finally, Defendants argue that all claims against the NYPD must be dismissed, because the NYPD is not a suable entity.  Defendants are correct.  "The NYPD, as a city agency, is not a suable entity."  *Paige-El v. Herbert*, 735 F. App'x 753, 755 (2d Cir. 2018) (citing N.Y. City Charter ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")).  Accordingly, all claims against the NYPD are dismissed.

\*     \*     \*

Plaintiff establishes a *prima facie* case of failure to accommodate a religious practice under the NYSHRL and the NYCHRL.  Plaintiff's claims are timely, and because the Court cannot conclude as a matter of law at this stage of the proceedings that Plaintiff's requested accommodation would pose an undue hardship, Defendants' motion to dismiss Claims One and Two is denied with respect to the City.  However, to the extent Claims One and Two are alleged against the NYPD, the motion is granted.

## C.    NYCHRL Cooperative Dialogue Claim

The FAC's final claim alleges a violation of the NYCHRL for Defendants' alleged failure to offer a cooperative dialogue regarding Plaintiff's requested religious accommodation.

---

[8] In *Goolsby v. City of New York*, which Defendants cite, *see* Reply 11, a New York trial court found that claims by a plaintiff challenging the denial of a medical accommodation to a COVID-19 vaccine mandate were subject to the four-month statute of limitations.  *See* 207 N.Y.S.3d 874, 884-86 (N.Y. Sup. Ct. Mar. 6, 2024).  However, *Goolsby* is not binding on this Court, and in the absence of binding New York law to the contrary, the New York Court of Appeals' decision in *Koerner* is controlling.

In light of decisions from New York courts finding the NYPD's process adequate, Defendants' motion to dismiss Claim Three is granted.

Under the NYCHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue [regarding an accommodation] within a reasonable time." N.Y.C. Admin. Code § 8-107(28)(a). That process must include "good faith . . . written or oral dialogue concerning the person's accommodation needs, potential accommodations that may address those needs, and the difficulties that such accommodations may pose for the covered entity." *Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 102 (App. Div. 2020). A failure to engage in cooperative dialogue regarding an accommodation gives rise to an independent cause of action, irrespective of any failure to accommodate claim. *See Goldman v. Sol Goldman Invs. LLC*, No. 20 Civ. 6727, 2022 WL 6564021, at *5 (S.D.N.Y. Aug. 5, 2022).

In *Marsteller v. City of New York*, the First Department held that the NYPD's process of reviewing religious accommodation requests satisfied the NYCHRL's requirements regarding a cooperative dialogue. 192 N.Y.S.3d 18, 20-21 (App. Div. 2023). It reasoned:

> Here, the City publicly offered public information on its process for reviewing accommodation requests related to the vaccine mandate, and informed employees about how to apply to their agency's Equal Employment Opportunity office and how to appeal denials. Petitioner availed himself of this process, the NYPD explained why his application did not qualify for an accommodation, and the parties further engaged during the administrative appeals process. Respondents also submitted evidence that they received approximately 6,000 requests for religious accommodations to the vaccine mandate from NYPD employees alone, which the City had to resolve under a constrained timeline during an evolving public health emergency. Petitioner has not established that, under these unique circumstances, the City HRL required a more robust or individualized dialogue than the process he received.

*Id.* at 20. Subsequent decisions have relied on *Marsteller* to reject cooperative dialogue claims from other NYPD officers or expanded *Marsteller*'s reasoning to other City agencies. *See*

24

*Almodovar v. City of New York*, No. 150593/2023, 2024 WL 1819065, at *6 & n.3 (N.Y. Sup. Ct. Apr. 25, 2024) ("To the extent that Plaintiff [an NYPD employee] went through the reasonable accommodation process set up by the City to resolve COVID-19 accommodation requests, the process afforded to Plaintiff was sufficient."); *Lynch v. Bd. of Educ.*, 221 A.D.3d 456, 458 (N.Y. App. Div. 2023) (finding that the Department of Education offered the petitioner a cooperative dialogue, relying on *Marsteller*); *Goolsby v. City of New York*, 207 N.Y.S.3d at 887-88 (finding that the Department of Buildings offered the plaintiff a cooperative dialogue, relying on *Marsteller*).

In response, Plaintiff cites various trial court decisions, many of which were decided prior to *Marsteller*. *See* Opp'n 21-23.  Only one of Plaintiff's cited cases post-dates *Marsteller*, namely *Smith v. N.Y.C. Fire Dep't*, No. 533033/2022 (N.Y. Sup. Ct. July 12, 2023), CEF No. 55. *Smith*, issued approximately three weeks after *Marsteller*, is a summary disposition issued after an Article 78 proceeding; it does not discuss *Marsteller* and instead only briefly comments on the failure to offer a cooperative dialogue.  *Id.* at 2 ("The Respondents did not engage in a cooperative dialogue that assessed the needs of the Petitioner and the reasonableness of the accommodation requested.  Under the NYCHRL, the cooperative dialogue should have occurred and continued until, if possible, an accommodation reasonable to the employee and employer could be reached.").  The persuasive weight, if any, of *Smith* does not outweigh the clear instructions from New York's appellate courts regarding the requirements of the cooperative dialogue process and the compliance of the City's vaccination exemption procedures with those requirements.  Plaintiff also notes that the City opposed discretionary review of *Marsteller* by the New York Court of Appeals.  *See* Opp'n 23-24.  That a party opposed further appellate review of a decision in its favor is to be expected, making this of limited relevance.  In any event, New

York's appellate courts, in *Marsteller* and *Lynch*, held that the systems operated by the NYPD and other City agencies satisfy the cooperative dialogue requirements of the NYCHRL; in the absence of authority to the contrary, Defendants' motion is granted.

*      *      *

For the reasons given below, Defendants' motion to dismiss is **GRANTED IN PART, DENIED IN PART**.  Defendants' motion to dismiss Claims One and Two is granted in part, with respect to claims against the NYPD, and Defendants' motion to dismiss Claims Three and Four is granted.  Defendants' motion to dismiss Claims One and Two, with respect to claims against the City, is denied.

The Clerk of Court is respectfully directed to close the motion at ECF No. 28.

SO ORDERED.

Dated:  July 12, 2024
        New York, New York

_____
        DALE E. HO
United States District Judge

26