# Deposition Transcript

Case Number: 1:23-cv-08986-DEH
Date: May 29, 2024

In the matter of:

# NANCY CHINCHILLA v NYC POLICE DEPARTMENT, et al.

# Police Officer Keith Cattonar



CERTIFIED COPY

Reported by:
AMY S. KLEIN-CAMPION

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
 1
 2        IN THE UNITED STATES DISTRICT COURT
 3      FOR THE SOUTHERN DISTRICT OF NEW YORK
 4   -------------------------------x
 5   NANCY CHINCHILLA,   Case No. 1:23-cv-08986-DEH
 6             Plaintiff,
 7             v.
 8   NEW YORK CITY POLICE DEPARTMENT
 9             and
10   CITY OF NEW YORK,
11             Defendants.
12   -------------------------------x
13                May 29, 2024
14                10:01 a.m.
15
16      REMOTE ZOOM DEPOSITION of POLICE
17   OFFICER KEITH CATTONAR, taken by counsel
18   for Plaintiff, pursuant to Notice, dated
19   May 20, 2024, before Amy S. Klein-Campion,
20   a Shorthand Reporter and Notary Public
21   within and for the State of New York.
22
23
24
25   JOB NO.: 1003726
```

1                - P.O. Cattonar -
2    You could possibly text or message.  I'm
3    asking not while the deposition is taking
4    place, you do not do that.  Is that okay?
5         A.    Yes.
6         Q.    Let me know if you need any
7    breaks and then we can stop and take a
8    short break, okay?
9         A.    Okay.
10        Q.    All right.  What is your
11   position with the NYPD?
12        A.    Police officer.
13        Q.    How long have you been doing
14   that?
15        A.    Almost 12 years.
16        Q.    What are your job duties as a
17   police officer?
18        A.    I work administratively in an
19   office.
20        Q.    What specifically
21   administratively are you doing in the
22   office?
23              MS. MINICUCCI:  Objection.
24              You can answer.
25        A.    Data entry.

1              - P.O. Cattonar -
2     Q.    What type of data?
3     A.    Basically, numbers for
4  reasonable accommodations amongst other
5  things that happen in the unit.
6     Q.    "Numbers for reasonable
7  accommodations," can you clarify what that
8  means?
9           MS. MINICUCCI:  Objection.
10          You can answer.
11    A.    Basically, just keep a database
12 of how many reasonable accommodations come
13 in and we just -- I make sure that it's
14 up-to-date and all the information is
15 entered correctly.
16    Q.    Do you also record whether these
17 accommodation requests are approved or
18 denied?
19    A.    In the database, yes.
20    Q.    Where is this database located?
21    A.    It is with -- it's in the NYPD,
22 I guess you want to say, database.
23    Q.    And are the reasonable
24 accommodation requests specifically to the
25 COVID-19 vaccine mandate stored separately

1               - P.O. Cattonar -
2    denial perhaps, for example, the
3    applicant's personnel folder or if they
4    had previous religious accommodations or
5    anything like that to submit to DCAS?
6            MS. MINICUCCI:  Objection.
7            You can answer.
8       A.   I did not.
9       Q.   Did you have to undertake your
10   own investigation of what to submit to
11   DCAS or did somebody provide it to you?
12           MS. MINICUCCI:  Objection.
13           You can answer.
14      A.   No, we took whatever was in
15   their folder, it was scanned in and it was
16   sent to DCAS.
17           And then for the appeals, that
18   was something to do with our IT Department
19   where when they sent in their appeal, then
20   they would put it into a folder and we
21   would identify them via their tax
22   number -- which everyone has there own
23   individual tax number -- and we would take
24   that documentation and we would submit it
25   to DCAS as well with their original

1 - P.O. Cattonar -
2 application and any supporting
3 documentation.
4     Q. The IT Department folder, is
5 that an electronic folder?
6     A. Yes.
7     Q. And the folder that you said you
8 would access all the documents and send to
9 DCAS, that was an actual physical folder?
10     MS. MINICUCCI: Objection.
11     You can answer.
12     A. Could you repeat the question?
13     Q. The folder that you testified
14 about that you would take all of the
15 information in the applicant's folder and
16 send to DCAS, was that a physical folder
17 or was it electronic?
18     A. It was a -- it was the physical
19 folder and then we would take that
20 documentation and in order to submit it
21 electronically we would -- we would scan
22 it in.
23     Q. Is there a name for this folder?
24     A. I don't remember.
25     Q. Is it the applicant's personnel

1                  - P.O. Cattonar -
2  file folder?
3             MS. MINICUCCI:  Objection.
4             You can answer.
5        A.    No.  I -- we did not have access
6  to their personnel folder.
7        Q.    Does this folder only contain
8  information related to the applicant's
9  reasonable accommodation request for the
10 vaccine mandate?
11            MS. MINICUCCI:  Objection.
12            You can answer.
13       A.    Yes.
14       Q.    Do you know who other than you
15 put documents in this folder?
16            MS. MINICUCCI:  Objection.
17            You can answer.
18       A.    There was multiple people
19 working in the office so if that case
20 folder in regards to reasonable
21 accommodation for COVID came across their
22 desk, then they probably would have been
23 the ones scanning it into the system.
24       Q.    Is there any documentation in
25 the folder outside of the reasonable

1 - P.O. Cattonar -
2 accommodation request, the NYPD's denial
3 and the notes that you testified about?
4     MS. MINICUCCI: Objection.
5     You can answer.
6   A. It -- again, it would be all of
7 documentations that were in their folder.
8   Q. When you testified, "if somebody
9 had taken notes it would be in the
10 folder," can you explain what you mean by
11 that?
12   A. Well, anything that would
13 involve a case we wouldn't -- we wouldn't
14 discard. So if it was a sticky note,
15 "call back," whatever, it would go into
16 the folder or any sort of, like, Hey,
17 they're going to send their documentation
18 over at this point in time or if they sent
19 an e-mail and it was in the body of an
20 e-mail, we would just print the e-mail out
21 and that would be added to the folder.
22   Q. How would you know if there was
23 an e-mail to enter into the folder?
24     MS. MINICUCCI: Objection.
25     You can answer.

1                - P.O. Cattonar -
2  in the database?
3           MS. MINICUCCI:  Objection.
4           You can answer.
5      A.   There are separate databases for
6  different -- there's different databases.
7  So there would be -- it would still be in
8  the system but we -- we do have a separate
9  one as well for reasonable accommodation.
10     Q.   For reasonable accommodations on
11 the COVID vaccine mandate?
12     A.   Yes, correct.
13 REQ     MS. MARTINEZ:  We're going to
14     request the data on the reasonable
15     accommodation request for the
16     COVID-19 vaccine mandate which I will
17     follow-up with counsel in writing.
18          MS. MINICUCCI:  We'll take it
19     under advisement.
20 BY MS. MARTINEZ:
21     Q.   Have you ever had any positions
22 with the NYPD before the administrative
23 data entry position you hold now?
24     A.   I'm sorry -- so sorry.  Can you
25 repeat the question?